**RAVIN GREENBERG LLC**
Howard S. Greenberg, Esq.
Chad B. Friedman, Esq.
101 Eisenhower Parkway
Roseland, New Jersey 07068
Telephone: (973) 226-1500
Facsimile: (973) 226-6888

*Counsel for Allerton Fund II LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------X
:
In re:                                  : Chapter 11
:
**624 EAST 222ND STREET, LLC**,         : Case No.: 12-13992 (jmp)
:
              Debtor.                   :
------------------------------------------------------------X

**RESPONSE OF ALLERTON FUND II LLC TO DEBTOR'S MOTION
TO PRIVATELY SELL ITS REAL PROPERTY FREE AND
CLEAR OF ALL LIENS, CLAIMS AND ENCUMBRANCES, TO
STEVEN FINKELSTEIN, PURSUANT TO 11 U.S.C. § 363(b), (f) AND (m)**

Allerton Fund II LLC ("**Allerton**"), the holder of a valid perfected first mortgage on certain real property located at 624 East 222nd Street, Bronx, New York (the "**Property**"), the sole asset of 624 East 222nd Street LLC (the "**Debtor**"), by and through its counsel, hereby files the within response (the "**Response**") to the Debtor's Motion to Sell its Real Property to Steven Finkelstein free and clear of all liens, claims and encumbrances (the "**Sale Motion**").

**PRE-PETITION BACKGROUND**

1.      On September 21, 2012, (the "**Petition Date**"), the Debtor filed a voluntary petition under chapter 11 of the Bankruptcy Code.

2.      Immediately prior to the Petition Date, a foreclosure sale of the Debtor's Property was scheduled for September 24, 2012.

1

3.  The Debtor's sole asset is the Property which consists of a six-story multiple-dwelling residential building with approximately forty-three (43) apartment units.

4.  The Debtor's case is a "single asset" case within the meaning of the Bankruptcy Code.

5.  Pre-petition, Dominick Calderoni, Esq. was appointed as receiver (the "**Receiver**") over the Property.

**POST-PETITION BACKGROUND**

6.  Shortly after the Debtor's Petition was filed, Allerton filed a motion to Excuse the State Court Receiver from Compliance with Turnover under Section 543 of the Bankruptcy Code; and to Determine that the Rents are not Property of the Estate (the "**543 Motion**")[1]. The 543 Motion was predicated on, among other things, the bases that the Debtor's principal had no experience owning, and no expertise operating, multifamily residential real estate.

7.  In fact, upon information and belief, the Debtor's principal had inherited the Property from her father.

8.  In an acceptable settlement of the 543 Motion, counsel to the Debtor and counsel Allerton were able to negotiate a stipulation which excused the Receiver from Turnover and provided other related relief.   The Receiver continues to operate the Property for the benefit of the within estate.

9.  After approximately six (6) months of waiting for the Debtor to take some sort of affirmative action in its chapter 11 proceeding, however, Allerton, on March 7, 2013, filed its

---

[1] The 543 Motion also contains an in-depth recitation and history leading up the filing of the Petition, including copies of all loan documents, assignments, and pleadings filed in the state court foreclosure action., reference herein as if set forth at length.

2

own Plan and Disclosure Statement, providing, in essence, a plan that that would title to the Property to Allerton's designee, and would pay creditors, in full, at confirmation.

10. Thereafter, on April 19, 2013, in response to certain comments and requests raised by the Office of the US Trustee, Allerton filed its Amended Plan (the "**Amended Plan**") and Disclosure Statement (the "**Amended Disclosure Statement**")  There was no real substantial difference in treatment to creditors from the Plan to the Amended Plan.

11. A hearing to approve Allerton's Amended Disclosure Statement was initially scheduled for June 6, 2013, and was adjourned by the Court until July 11, 2013.

12. Additionally, and aside, on March 6, 2013, the Debtor, filed an application to retain Keller Williams Realty as real estate broker (the "**KWR Application**").  Allerton filed opposition to the KWR Application, March 12, 2013, and the Debtor was to schedule a hearing the issue.

13. The Court, on June 6, 2013, ultimately approved the KWR Application[2], with counsel to the Debtor agreeing on the record to preserve Allerton's rights to credit bid without a broker fee, notwithstanding KWR's retention.  A copy of KWR's proposed retention order, which was prepared, and later circulated by counsel to the Debtor,  is attached hereto as Exhibit "A."[3]

### EVENTS LEADING UP TO THE DEBTOR'S SALE MOTION

14. At the June 6, 2013 hearing, the Debtor also represented that it had an offer for the Property, from Steven Finkelstein, for the aggregate amount of approximately $3,525,000.00, subject to various unidentified contingencies (the "**Finkelstein Offer**").  The Court directed the

---

[2] For a second time … Allerton did not receive notice of the first scheduled hearing.

Debtor to immediately file a motion to sell the Property, and not later than within <u>twenty</u> (20) days.

15. Since June 6, 2013, counsel to the Debtor and counsel to Allerton engaged in discussions regarding the Property. Allerton provided the Debtor with an updated payoff, which demonstrated that Allerton is owed over $3,208,000.00, and that a sale to Finkelstein for $3,525,000.00 would not necessarily satisfy all claims in full, especially with a potential $175,000.00 broker fee. A copy of Allerton's most recent payoff statement is attached hereto as Exhibit "B."

16. Despite numerous written and oral requests, Allerton was not provided with the contract arising out of the Finkelstein Offer.

17. Therefore, since no third party contract appeared forthcoming at the time, and notwithstanding the fact that its Amended Disclosure Statement was pending Court approval, Allerton decided to make its own purchase offer to the Debtor, again in an effort to end the case once and for all, providing for what its believed to be payment to all creditors, and a significant distribution to equity.

18. The offer made to the Debtor by Allerton was for the aggregate amount of $3,555,000.00. In addition to being $30,000.00 higher, it was far superior to the Finkelstein Offer because (i) the offer envisioned approval through the plan process (through a consensual Second Amended Plan, which could be done in a very short time frame, since the Amended Plan was already pending approval), thereby saving the estate significant transfer taxes, and (ii) the offer was not, by virtue of the agreed-upon KWR retention order, subject to any broker fees, a

---

[3] Allerton is unaware whether counsel to the Debtor has submitted the KWR retention order to the Court for entry.

top line savings to the estate of $175,000.00.   Copies of communications pertaining to the offer are attached hereto as Exhibit "C."

19.     Counsel to the Debtor <u>orally accepted</u> Allerton's offer, and told counsel to Allerton that a copy of the contract could be obtained by contacting Robert Swetnick, Esq., at the firm of Eaton & Van Winkle, LLP[4].   Although Allerton's counsel made several requests for the contract, nothing was ever provided. Copies of communications pertaining to these requests are attached hereto as Exhibit "D."

20.     On June 26, 2013, which was the Court's imposed twenty (20) day deadline, counsel to the Debtor orally advised counsel to Allerton that Finkelstein had increased his offer to $3,800,000.00.

## THE SALE MOTION

21.     On the evening of July 1, 2013, the Debtor filed the Sale Motion, seeking to approve a sale to Finkelstein.  To the Sale Motion was attached a signed contract (the "**Sale Contract**").  The notice of motion filed with the Court also had a hearing date of July 11, 2013, and a response deadline of July 8, 2013, basically providing parties with a week to respond to the Sale Motion.

22.     Moreover, upon information and belief, counsel to the Debtor has been away since the Sale Motion was filed, and therefore was not available to answer any questions pertaining to the Sale Motion.

23.     Without the benefit of additional information, and given the extremely shortened time-frame offered by the Debtor's Notice of Motion, Allerton felt compelled to file the within

---

[4] An earlier letter in our file refers to Mr. Swetnick as counsel to the Debtor's principal. It is unclear whether he is also real estate counsel to the Debtor or what his role in this case may be.

Response, in an effort to preserve its rights, but also to raise the Court's awareness to the Debtor's uncanny position.

## ALLERTON'S OBJECTIONS TO THE SALE MOTION

24.  The Sale Motion contains a significant procedural deficiency, but more importantly, it raises several other problematic related and substantive issues.

25.  First, the Debtor's Sale Motion may be procedurally deficient because it was filed on ten (10) days notice, and without an order shortening time. F.R.B.P. 2002 (a)(2) requires a 21 day notice period for a sale motion. It is unclear whether the Sale Motion can be heard on July 11, 2013, given the deficient notice and non-compliance with F.R.B.P. 2002. It is in everyone's best interest to ensure that the Sale Motion was properly filed and noticed.

26.  Substantively, however, Allerton's comments and concerns are as follows:

(a)  The Sale Motion <u>states that it is not subject to any competing or higher/better offers</u>. This very concept raises Allerton's suspicion[5]. In fact, when comparing apples to apples, Allerton's offer for $3,555,000.00, which absorbs all transfer taxes through its plan, bypasses the broker fee, and pays creditors in full upon Plan Confirmation, is actually <u>higher and better</u> than the $3,800,000.00 Sale Contract. Pursuant to section 9.2 of the Sale Contract, Transfer Taxes are to be paid by Seller. In this case, transfer taxes will approximate $115,000.00. Moreover, the broker fee due under the Sale Contract is $190,000.00. Subtracting those numbers leaves a net sum available to the estate of $3,495,000.00, which is still $60,000.00 less than Allerton's

---

[5] Why would the Debtor want to forego the possibility of more money or a better recovery?

6

$3,555,000.00 offer. Notwithstanding the existence of a higher offer, <u>the Sale Motion seeks to take away the Court's discretion to consider higher and/or better offers</u>!

(b)    Dovetailing into the concerns espoused under (a) above, the Debtor also represents that the Sale Contract will satisfy all claims.    Allerton points out that it is impossible to know what the universe of claims truly is because (i) the Debtor has not filed a claims bar date motion, and (ii) the Debtor has not been in control of the Property for over four years.  Therefore, he Debtor's representation that all claims will be paid in full cannot be taken at face value.  Putting Allerton's offer aside, one can make a comparison of the Sale Contract to Allerton's Amended Plan.  The Amended Plan <u>guarantees</u> that all allowed claims are paid in full, demonstrating that Allerton's Plan is a superior mechanism to satisfy claims.   Additionally, paragraph 3 of the Sale Motion, in referencing claims, refers to an outstanding tax liability of $2,300,000.00.    If such a claim exists, a $3,800,000.00 offer would clearly <u>not</u> pay all claims in full.

(c)    Despite the Debtor's assertions in the Sale Motion that the Court should not consider any other offers at all, the Sale Contract itself seem to have envisioned a competitive bidding process, and, seeking to give Finkelstein a "leg up," it contains a provision for a $100,000.00 break-up fee, in paragraph 14.20.  Allerton submits that, in the event competitive bidding is allowed,  a break-up fee of any size in this case is probably inappropriate, but that, no matter what, $100,000.00 is significantly out of scale for a single asset real estate case where a value can be determined and ascribed based upon a review of leases and filed financial reports.  The Court should not approve a break-up fee. Alternatively, if a bidding party wishes to file an administrative claim for actual costs and expenses, the Court can always make a determination at the appropriate

7

time, and within context, and the rights of a bidder are therefore preserved. In this case, Finkelstein is not really the "market maker," cannot justify such fees, and, in fact, his offer is not even the highest or the best.

(d)   It is not known whether Finkelstein has the financial wherewithal to close. The Sale Contract references Edward Friedman, Esq as attorney for the Buyer. Strangely, a copy of the deposit check for $175,000.00, which is attached to the Sale Motion, appears to have been written from the personal account of Edward Friedman, not Finkelstein. The Sale Motion makes no reference to Finkelstein's financial ability to consummate the Sale Contract. Additionally, a $175,000.00 deposit seems low on a contract price of $3,800,00.00. Upon information and belief, s standard deposit on a sale contract of this size should be around ten percent (10%) of the purchase price.

(e)   The Sale Motion represents that Allerton will be paid at closing. Allerton is seeking confirmation that its claim, as presented by its recent payoff, will be paid in full at closing. Pursuant to its rights under §363, Allerton, as secured creditor, will object to any sale that does not fully satisfy its claims at closing.[6]

(f)   The Sale Contract contains no "hard" closing date. Pursuant to §9.1 of the Sale Contract, the parties are to close within 45 days of Bankruptcy Court approval, but may extend the closing date through October upon mutual consent. Allerton accrues interest on its claim at $904.24 per day, and a delay of 120 days would cost the estate approximately $108,000.00. Given the fact that creditors can be satisfied in full almost immediately under Allerton's offer and under its Amended Plan, the Court should not

---

[6] The Debtor's Schedules had previously listed Allerton's claim as "disputed." To date, the Debtor has never articulated any "bonafide" dispute of Allerton's claims.

approve the Sale Contract without a "hard" close date. Additional waiting is unfair to Allerton and to creditors of this estate, and, through the erosion of time and accrual of more debt, this provision significantly diminishes the true value of the consideration contained in the Sale Contract.

(g) Even assuming, *arguendo*, that the Debtor submits that transfers taxes under the Sale Contract can be saved through the filing of a Plan, the <u>minimum</u> time required for Confirmation of any Plan submitted by the Debtor (from the time it is filed) would be between approximately sixty (60) and ninety (90) days. Therefore, in order for the Debtor to save transfer taxes under the current Sale Contract (the Sale Contract requires the Debtor to submit transfer tax returns), the Debtor would be required to (i) draft a plan and disclosure statement, and (ii) obtain confirmation thereof. In reality, this process is likely to take closer to ninety (90) days, and Allerton's claims will have grown by $81,381.60 during that time period. Again, comparing apples to apples, even if the Debtor were able to save transfer taxes through the filing of a Plan, Allerton's current offer is higher and better than the offer contained in the Sale Contract by virtue of its timing alone[7].

(h) The Sale Motion is unclear as to whether executory contracts (including leases) are being assumed or rejected. The Sale Motion does not specifically provide for any assumption or rejection under §365 of the Bankruptcy Code, and therefore, the Debtor may remain liable for certain liabilities notwithstanding a sale of assets. Without further clarification, it is difficult to evaluate the consideration set forth in the Sale Contract.

---

[7] Additionally, administrative expenses of the Debtor's professionals would significantly increase.

9

(i)     The Sale Contract requires the Receiver to turnover (at Closing) all security deposits but does not provide any clarification of whether the estate remains liable for any security deposits that may have been dissipated by the Debtor, or whether the purchaser expects a credit for same.

(j)     The Sale Contract requires a bargain and sale deed with covenants against Debtor's acts, which is contrary to other provisions in the Sale Motion and Sale Contract, which state that the sale is an "as is where is" sale.  Covenants could potentially make the estate liable post closing if there were inappropriate grantor (debtor) acts against title.

(k)     The Sale Motion does not adequately disclose the Debtor's principal(s) will have an interest or "side deal" with the purchaser.   Given the fact that the Debtor is seeking to sell the Property to Finkelstein <u>and will not consider any other higher offers</u>, the motives of the Debtor should be questioned and considered.  The 363 sale process is designed to promote active bidding, and the benefits of bankruptcy protection require full disclosure.  Moreover, the Debtor has fiduciary obligations, which seem to be falling wayward under the terms of the Sale Motion.  The principal of the Debtor should be questioned under oath as to her true intentions.

## **CONCLUSION**

27.     In summary, the thrust of Allerton's Response speaks to the Debtor's true intention under the Sale Motion.  Simply put, the Sale Motion does not seem designed to maximize distribution or to facilitate a quick closing, especially when a higher and better offer was already pending.  At a minimum, even if the Sale Contract is approved, bidding procedures to consider other offers should be imposed, with a final determination made by this Court.

28.     As this Court is aware, a sale under §363 is supposed to be an exercise of the Debtor's "sound" business judgment and discretion.  The Sale Motion, as is, does not demonstrate the Debtor's "sound" business judgment.

29.     In essence, the Sale Motion downgrades what should be a fairly straightforward and standard process, into a convoluted and time consuming endeavor.  Allerton's offer is pending.  Its Amended Plan is pending approval.  Both contain far less onerous terms than the Sale Contract, and both are better for the within estate.  Moreover, the net benefit to the estate under Allerton's offer is unquestionably *higher and better* than the consideration under the Sale Contract.

30.     Given the shortened deadline time contained in the Notice of Motion, Allerton has not had time to prepare and file a memorandum of law in support of its Response.  However, Allerton believes that its Response is grounded in prevailing law, and will support and supplement the Response with a Memorandum of Law if given additional time.

**WHEREFORE**, Allerton respectfully seeks (i) the entry of an order denying the approval of the Sale Contract as submitted, (ii) an order imposing reasonable bidding procedures to encourage an open and fair bidding process, and, finally, (iii) a determination that the Sale Contract consideration of $3,800,000.00, when broken down, is really not the highest or best offer, in light of Allerton's offer.

Dated: July 8, 2013
Roseland, New Jersey

**RAVIN GREENBERG, LLC**

By: /s/ Howard S. Greenberg
    Howard S. Greenberg
    Chad B. Friedman
    101 Eisenhower Parkway
    Roseland, New Jersey 07068
    Phone: (973) 226-1500