**RAVIN GREENBERG LLC**
Jaimie A. Slosberg, Esq.
Chad B. Friedman, Esq.
101 Eisenhower Parkway
Roseland, New Jersey 07068
Telephone: (973) 226-1500
Facsimile: (973) 226-6888

*Counsel for Allerton Fund II LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------X
                              :

In re:                          :          Chapter 11
                              :

**624 EAST 222ND STREET, LLC,**      :          Case No.: 12-13992 (rg)
                              :

          Debtor.             :
------------------------------------------------------------X

---

## FOURTH AMENDED DISCLOSURE STATEMENT DESCRIBING PLAN OF LIQUIDATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE PROPOSED BY ALLERTON FUND II LLC

---

# **TABLE OF CONTENTS**

Page

I. INTRODUCTION AND GENERAL BACKGROUND ........................................................................1

    A.   PURPOSE AND EFFECT OF THE PLAN ........................................................................2
    B.   OVERVIEW OF CHAPTER 11 ..........................................................................................2
    C.   SOLICITATION PROCESS ................................................................................................2
    D.   CONFIRMATION AND CONSUMATION OF THE PLAN ..............................................3

II. BACKGROUND TO THIS CHAPTER 11 CASE .........................................................................4

    A.   EVENTS LEADING UP TO THE CHAPTER 11 FILING AND SIGNIFICANT EVENTS DURING THE CHAPTER 11 CASE ........................................................................4
    B.   OVERVIEW OF ASSETS AND INDEBTEDNESS ..........................................................9
    C.   CLAIMS PROCESS AND CLAIMS BAR DATE ..............................................................9

III. SUMMARY OF PLAN ......................................................................................................11

    A.   GENERAL BASIS FOR THE PLAN ..............................................................................11
    B.   TREATMENT OF UNCLASSIFIED CLAIMS ................................................................12
    C.   CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS ......................14
    D.   MEANS FOR IMPLEMENTATION OF THE PLAN ......................................................15
    E.   TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES .................18
    F.   PROVISIONS GOVERNING DISTRIBUTIONS ............................................................18
    G.   PROCEDURES FOR RESOLVING DISPUTED, CONTINGENT AND UNLIQUIDATED CLAIMS OR EQUITY INTERESTS ..........................................................................20
    H.   CONDITIONS PRECEDENT TO CONFIRMATION AND CONSUMMATION OF THE PLAN .............21
    I.   SETTLEMENT, EXCULPATION, AND RELATED PROVISIONS ................................22
    J.   BINDING NATURE OF PLAN ......................................................................................22
    K.   RETENTION OF JURISDICTION ..................................................................................23
    L.   MISCELLANEOUS PROVISIONS ................................................................................23

IV. VOTING PROCEDURES ....................................................................................................24

V.  CONFIRMATION PROCEDURES ......................................................................................25

    A.   CONFIRMATION HEARING ..........................................................................................25
    B.   STATUTORY REQUIREMENTS FOR CONFIRMATION OF THE PLAN .....................25
    C.   CONTACT FOR MORE INFORMATION ......................................................................29

VI.  PLAN-RELATED RISK FACTORS AND ALTERNATIVES TO CONFIRMATION AND CONSUMMATION OF THE PLAN ......................................................................................29

    A.   GENERAL BANKRUPTCY LAW AND PLAN-RELATED CONSIDERATIONS ..............29
    B.   DISCLOSURE STATEMENT DISCLAIMER ..................................................................30
    C.   ALTERNATIVES TO CONFIRMATION AND CONSUMMATION OF THE PLAN ..............31

VII. RECOMMENDATION ......................................................................................................31

# I.
## INTRODUCTION AND GENERAL BACKGROUND

On September 21, 2012 (the "Petition Date") 624 East 222nd Street LLC, the debtor and debtor in possession (the "Debtor[1]"), filed a voluntary petition with the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"), under chapter 11 of the Bankruptcy Code (the "Chapter 11 Case").

Allerton Fund II LLC ("Allerton"), the holder of a valid perfected first mortgage on certain real property located at 624 East 222nd Street, Bronx, New York submits this Fourth Amended Disclosure Statement pursuant to section 1125 of the Bankruptcy Code (the "Disclosure Statement"), to Holders of Claims in connection with: (a) the solicitation of votes to accept or reject the Plan of Liquidation proposed by Allerton under Chapter 11 of the Bankruptcy Code, as the same may be amended from time to time (the "Plan"), which was filed by the Allerton with the Bankruptcy Court, and (b) the Confirmation Hearing (the "Confirmation Hearing"), which is scheduled for [_____, 2014, at ___:00 __.m.] (prevailing Eastern Time).  A copy of the Plan is attached hereto as Exhibit A and incorporated herein by reference.

The purpose of this Disclosure Statement is to set forth information (a) regarding the Debtor and the Chapter 11 Case, (b) concerning the Plan and alternatives to the Plan, (c) advising the Holders of Claims and Equity Interests of their rights under the Plan and (d) assisting the Holders of Claims in making an informed judgment regarding whether they should vote to accept or reject the Plan.

By order dated [_____], 2014 (the "Disclosure Statement Order"), the Bankruptcy Court approved this Disclosure Statement, in accordance with section 1125 of the Bankruptcy Code, as containing "adequate information" to enable a hypothetical, reasonable creditor or investor typical of Holders of Claims against, or Equity Interests in, the Debtor to make an informed judgment as to whether to accept or reject the Plan, and authorized its use in connection with the solicitation of votes with respect to the Plan.

**ALLERTON BELIEVES THAT THE PLAN PROVIDES FOR THE BEST AVAILABLE RECOVERY TO ITS STAKEHOLDERS BECAUSE IT PROVIDES FOR THE FULL AND IMMEDIATE PAYMENT TO CREDITORS ON ALL ALLOWED CLAIMS (WITHOUT INTEREST) AND PROVIDES FOR A DISTRIBUTION TO EQUITY HOLDERS.**

**ALLERTON IS PROVIDING THE INFORMATION IN THIS DISCLOSURE STATEMENT FOR PURPOSES OF SOLICITING VOTES TO ACCEPT OR REJECT THE PLAN.  NOTHING IN THIS DISCLOSURE STATEMENT MAY BE RELIED UPON OR USED BY ANY ENTITY FOR ANY OTHER PURPOSE.**

---

[1] All capitalized terms used herein but not otherwise defined shall have the meanings ascribed to them in the Plan.

**ALLERTON HAS REVIEWED THE INFORMATION PROVIDED IN THIS DISCLOSURE STATEMENT. ALTHOUGH IT HAS USED ITS REASONABLE BUSINESS JUDGMENT TO ENSURE THE ACCURACY OF THIS INFORMATION, THE INFORMATION CONTAINED IN, OR INCORPORATED BY REFERENCE INTO, THIS DISCLOSURE STATEMENT HAS NOT BEEN AUDITED.**

**EACH HOLDER OF A CLAIM SHOULD CONSIDER CAREFULLY ALL OF THE INFORMATION IN THIS DISCLOSURE STATEMENT.**

## A.    PURPOSE AND EFFECT OF THE PLAN

Upon and after the Effective Date, the Plan provides for a liquidation of the Debtor and distribution of cash to Holders of certain Claims.

## B.    OVERVIEW OF CHAPTER 11

Chapter 11 is the principal business reorganization chapter of the Bankruptcy Code. In addition to permitting debtor rehabilitation or a sale of assets to satisfy claims, chapter 11 promotes equality of treatment for similarly situated creditors and similarly situated equity interest holders, subject to the priority of distributions prescribed by the Bankruptcy Code.

The commencement of a chapter 11 case creates an estate that comprises all of the legal and equitable interests of the debtor as of the bankruptcy petition date. Consummating a plan is the principal objective of a chapter 11 case. The Bankruptcy Court's confirmation of a plan binds the debtor, any person acquiring property under the plan, any creditor or equity interest holder of a debtor, and any other person or entity as may be ordered by the Bankruptcy Court in accordance with the applicable provisions of the Bankruptcy Code. Subject to certain limited exceptions, the order issued by the Bankruptcy Court confirming a plan provides for the treatment of the debtor's liabilities in accordance with the terms of the confirmed plan.

Prior to soliciting acceptances of a proposed chapter 11 plan, section 1125 of the Bankruptcy Code requires a plan proponent to prepare a disclosure statement containing information of a kind, and in sufficient detail, to enable a hypothetical reasonable creditor or investor to make an informed judgment regarding acceptance of the chapter 11 plan. This Disclosure Statement is being submitted in accordance with the requirements of section 1125 of the Bankruptcy Code.

## C.    SOLICITATION PROCESS

The following documents and materials will constitute the solicitation package (collectively, the "Solicitation Package"):

- (i) the Disclosure Statement Order;

- (ii) form of Ballot and instructions with respect thereto; and

2

- (iii) the approved form of the Disclosure Statement (together with the Plan).

## D.    CONFIRMATION AND CONSUMATION OF THE PLAN

Section 1128(a) of the Bankruptcy Code requires the Bankruptcy Court, after notice, to hold a hearing on confirmation of a plan filed under chapter 11 of the Bankruptcy Code.  Section 1128(b) of the Bankruptcy Code provides that any party in interest may object to confirmation of the plan.

1.    Confirmation Hearing Date

**The Confirmation Hearing will commence on [_____ 2014 at_____:00__.m.]**, before the Honorable Robert Grossman, United States Bankruptcy Judge, in the Bankruptcy Court.  The Confirmation Hearing may be continued from time to time without further notice other than an adjournment announced in open court at the Confirmation Hearing or at any subsequent adjourned Confirmation Hearing.  The Bankruptcy Court, in its discretion and prior to the Confirmation Hearing, may put in place additional procedures governing the Confirmation Hearing.  The Plan may be modified, if necessary, prior to, during, or as a result of the Confirmation Hearing, without further notice to parties in interest.

**The Confirmation Hearing may be adjourned from time to time without further notice except for an announcement of the adjourned date made at the Confirmation Hearing or any adjournment thereof.**

2.    Plan Objection Deadline

**The Plan Objection Deadline is [_____. 2014 at_____:00_____.m.]** All objections to the Plan must be filed with the Bankruptcy Court and served on Allerton's attorneys, the Debor's attorneys, the Office of the United States Trustee, and certain other parties in accordance with the Disclosure Statement Order on or before the Plan Objection Deadline. Objections to the Plan or requests for modifications to the Plan, if any, must, be in writing, conform to the Bankruptcy Rules and the Local Bankruptcy Rules, be filed, contemporaneously with a proof of service, with the Bankruptcy Court and served so that it is **actually received** by Allerton's attorneys and other parties identified in the Disclosure Statement Order on or prior to the Plan Objection Deadline.

The proposed schedule will provide Entities with sufficient notice of the Plan Objection Deadline, which will be at least 28 days, as required by Bankruptcy Rule 2002(b).  Allerton believes that the Plan Objection Deadline will afford the Bankruptcy Court, Allerton, the Debtor and other parties in interest reasonable time to consider the any objection to the Plan prior to the Confirmation Hearing.

**THE BANKRUPTCY COURT WILL NOT CONSIDER PLAN OBJECTIONS UNLESS THEY ARE TIMELY SERVED AND FILED IN COMPLIANCE WITH THE DISCLOSURE STATEMENT ORDER.**

> **IF CONFIRMED, THE PLAN WILL BIND ALL HOLDERS OF CLAIMS AGAINST AND INTERESTS IN THE DEBTOR TO THE FULLEST EXTENT AUTHORIZED OR PROVIDED UNDER THE BANKRUPTCY CODE, INCLUDING SECTIONS 524 AND 1141 THEREOF, AND BY ALL OTHER APPLICABLE LAW.**

## II.
## BACKGROUND TO THIS CHAPTER 11 CASE

### A.    EVENTS LEADING UP TO THE CHAPTER 11 FILING AND SIGNIFICANT EVENTS DURING THE CHAPTER 11 CASE

The Debtor's primary asset is property located at 624 East 222nd Street, Bronx, New York (the "Property"), which consists of a six-story multiple-dwelling residential building with approximately forty-three (43) rental apartment units.

### Events Leading Up to the Filing

Over ten (10) years ago, the Debtor executed an Amended, Restated and Consolidated Modification and Extension Agreement, dated August 7, 2003, together with certain Promissory Notes consolidated therein, and Assignment of Rents (collectively, the "Loan Documents"), for purposes of borrowing the principal amount of $1,600,000.00 (the "Loan") from Dime Savings Bank of Williamsburg ("Dime").

Pursuant to the Loan Documents, the Debtor pledged its Property as collateral to secure, among other things, payments which would be due to Dime over the course of the Loan (the "Mortgage").  Additionally, to further secure the Debtor's obligations to Dime, the Debtor executed an Assignment of Rents and Leases (the "Assignment of Rents") wherein the Debtor absolutely assigned to Dime all of its rights, title and interest in and to all leases and rents related to the Property.

The Mortgage and the Assignment of Rents were later assigned by Dime to Allerton by a certain Assignment of Mortgage dated March 14, 2008.  As a result, Allerton held, and continues to hold, a valid, perfected, first priority mortgage and security interest on the Property, together a valid, perfected first priority security interest on all rents generated from the Property.

### *The Foreclosure Action*

In 2008, the Debtor defaulted on its obligations to Allerton, and as a result of the Debtor's default**,** Allerton commenced an action by filing a Summons and Verified Complaint in the Supreme Court of New York, Bronx County (the "Foreclosure Action") against the Debtor. Initially, the Foreclosure Action was acrimonious, because Allerton believed that the Debtor was

diverting rents from the Property.  Therefore, during the Foreclosure Action, pursuant to an application filed by Allerton, a receiver, Dominick Calderoni (the "Receiver"), was appointed by the state court to preserve and protect the Property.

The Receiver, pursuant to an order obtained during the Foreclosure Action, hired a management company, DJA Management Corp. ("DJA"), to assist him with operating the Property.  Gary S. Basso, Esq. was appointed as referee (the "Referee") to, among other things, liquidate the Property.  The Receiver, through DJA, had been managing and operating the Property since 2010.

On April 14, 2011, the Referee, commensurate with his duties, filed his report with the state court determining that the amount due to Allerton as of that date was $2,299,046, with default interest and related charges continuing to accrue, as provided in the Loan Documents. Approximately one year later, on March 20, 2012, after a period of further litigation between the parties, a Judgment of Foreclosure was finally entered by the state court (the "Foreclosure Judgment").  Among other things, the Foreclosure Judgment affirmed the amount due Allerton, and set the Property up for public auction.   Three (3) days before the last scheduled sale date, which was supposed to occur on September 24, 2012, the Debtor filed its chapter 11 petition.

### Significant Events During the Case

The Petition Date was September 21, 2012.   After filing several amended Petitions to correct the Debtor's name and/or tax id, the Debtor filed its Schedules and Statement of Affairs on October 8, 2012.

#### *The 543 Motion*

On November 12, 2012, the Debtor issued a letter to the Receiver for "turnover" of the Property and rents to the Debtor, and copied Allerton thereon.  Two (2) days after receiving the letter, on November 14, 2012, Allerton filed a motion seeking an order authorizing the Receiver to maintain possession and control of the Debtor's assets, pursuant to section 543 of the Bankruptcy Code (the "543 Motion").   The primary purpose of 543 Motion was to excuse the Receiver from giving up control up of the Property to the Debtor for several reasons, including, but not limited to the fact that (i) the Debtor's representative Deanne Rodney ("Rodney"), had no experience managing commercial real estate (she had inherited the Property from her father) and therefore Allerton believed she could not adequately manage the Property, (ii) during the Foreclosure Action, the Debtor, under Rodney's control, had demonstrated a disregard of its fiduciary duties, deliberately failing to turn over books and records to the Receiver, and purposely failing to turn over rents to the Receiver despite the existence of state court order(s) requiring turnover, and (iii) in filing a chapter 11 proceeding immediately prior to a foreclosure sale, the Debtor was acting in "bad faith," an attempt to restructure its operations in the face of what was essentially a two-party dispute.[2]

---

[2]  For more information pertaining to the Debtor's pre-petition conduct, parties should refer to the 543 Motion (docket entry 17)

The Debtor stipulated to the relief sought by Allerton and agreed to allow the Receiver, and DJA, to continue to manage the Property throughout the chapter 11 process. Since that time, the Receiver has managed the Property, and has filed the necessary monthly operating reports, which provide necessary disclosure regarding the operations of the Property.

### *Professionals*

Pursuant to relevant provisions of the Bankruptcy Code, Bankruptcy Court approval (through an order of the Court) is generally necessary for the Debtor to properly retain and compensate its professionals. Once retained, an authorized professional is allowed to apply for compensation upon notice to creditors and must demonstrate to the satisfaction of a Bankruptcy Court and the Office of the United States Trustee that the fees being requested are reasonable and proper. Over the course of the case, the Debtor filed the following applications with the Bankruptcy Court to retain professionals:

| Name | Application Date | Description | Retention Status |
|---|---|---|---|
| Flaum & Associates, P.C. | 1/28/2013 | Counsel to the Debtor (First)[3] | No order entered |
| Wayne Greenwald P.C. | 12/13/2013 | Counsel to the Debtor (Second) | Order entered on 4/17/2014 |
| Keller Williams Realty | 3/06/2013 | Real Estate Broker | No final order entered |

The Debtor has not, as of June 17, 2014, filed any applications seeking to compensate its professionals. The compensation terms disclosed in their respective applications by Flaum & Associates, P.C. and Wayne Greenwald P.C. are on an hourly basis (i.e. at a rate per hour). Keller Williams Realty's compensation terms, as disclosed, are on a commission basis (5%), payable upon a sale of the Property to a third party.

### *Allerton Files a Plan and Disclosure Statement*

After approximately six (6) months since the Debtor's filing, Allerton believed that the Debtor had made no meaningful progress toward proposing a viable Plan or reorganization. Therefore, on March 7, 2013, Allerton filed its first Liquidating Plan and Disclosure Statement. Shortly thereafter, on April 19, 2013, in response to certain requested modifications and clarifications by the United States Trustee, Allerton filed a First Amended Disclosure Statement and First Amended Liquidating Plan. Both Plans sought approval of a sale of the Property to Allerton in exchange for payment in full to all creditors, and a release/waiver of Allerton's claim(s) against the Debtor.

---

[3] The Debtor later obtained replacement counsel for Flaum and Associates, P.C.

*The Debtor Files a Motion to Sell its Property*

In possible response to Allerton's filing of a Plan, the Debtor, on July 1, 2013, filed a motion seeking approval of a sale of the Property to an individual buyer (the "Interested Buyer") for an aggregate price of $3,800,000.00 (the "Sale Motion").

The Bankruptcy Court denied the Sale Motion, agreeing with Allerton, which had objected to the sale (docket no. 48), raising, among other things, a plethora of problematic issues, including that (i) a sale for 3,800,000.00, after payment of broker fees in the approximate amount of $160,000.00 and significant transfer taxes, would not necessarily pay all creditors in full, (ii) the Sale Motion was procedurally deficient and did not contain adequate notice, (iii) the sale was not subject to any higher or better offers, (iv) the contingencies and closing date of the potential sale were unclear, (v) the existence of an excessive stalking horse fee to the buyer, and (vi) there were several other concerns relating to disclosure.

The Bankruptcy Court agreed with Allerton that the better way to sell the Property was pursuant to a Plan and Disclosure Statement, instead of using motion practice. The Bankruptcy Court later instructed Allerton to re-work its Amended Plan to incorporate a set of sale bidding and noticing procedures therein, and to seek input on those procedures from the Interested Buyer.

*Allerton Files its Second Amended Plan and Second Amended Disclosure Statement*

At the Court's urging, and after consultation with the Debtor, on October 22, 2013, Allerton filed a Second Amended **Joint** Plan and Disclosure Statement with the Debtor (the "Joint Plan"). The Joint Plan provided for an orderly liquidation of the Property through a set of sale and bidding procedures. <u>The Joint Plan also incorporated the terms of an agreement between the Debtor and Allerton as to the amount of Allerton's claim. The Debtor had listed Allerton's claims as "disputed," but had never been able to articulate the basis of any real dispute.</u> Under the Joint Plan, however, the Debtor withdrew its dispute and agreed to the amount of Allerton's claims. This was necessary to help establish the bidding procedures, including a possible partial credit bid from Allerton.

On January 28, 2014, Allerton filed a supplement to the Joint Plan and Disclosure Statement with a finalized set of bidding procedures (approved by both the Debtor and the Interested Buyer), pursuant to which Allerton acted as a "stalking horse" buyer at a purchase price of $3,610,000.00, which consisted of a partial credit bid (the "Allerton Bid"). The Allerton Bid was technically higher and more beneficial to the estate than the offer set forth in the Sale Motion because it was not subject to any broker fee, transfer taxes, and was payable immediately upon Confirmation of the Plan. Counsel to Allerton, however, later confirmed through the Interested Buyer's counsel that the Interested Buyer was no longer interested in bidding on the Property at the incremental prices set forth in the bidding procedures. Therefore, Allerton became the only known active interested buyer at this price.

In or about December 2013, the Debtor announced it was retaining new counsel. At around the same time, Allerton was advised that the Debtor was considering withdrawing its support for the proposed Joint Plan, and approval of the Joint Plan was delayed, pending proper retention of the Debtor's new counsel.

In March, 2014, the Debtor, with its new counsel, and Allerton, with its counsel, met to discuss the terms of yet another amended plan that the Debtor would support. That meeting concluded with an oral agreement between the parties, and it was that agreed Allerton would memorialize the terms of the parties' understanding into an agreement, which in turn would be incorporated into a third amended plan (the "Plan Agreement"). The Plan Agreement provided for the transfer of the Property to Allerton, in exchange for payment on all Allowed Claims, and the <u>unconditional guarantee</u> of a substantial payment to Equity. From Equity's prospective, the Plan Agreement was less risky than a sale under bidding procedures because there was a guaranteed sum payable to Equity, after payment of all Allowed Claims.

Allerton memorialized the Plan Agreement and sent it to Debtor's counsel for review. Allerton also requested that the Debtor execute the Plan Agreement prior to Allerton incurring additional expense associated with drafting yet another amended plan, which was an appropriate request, given the fact that the Debtor had previously reneged on its support for the Joint Plan. Despite repeated requests from Allerton during the month of April, 2014, the Debtor did not return an executed Plan Agreement.

Surprisingly, during a recent status conference in May 2014, the Debtor's counsel represented that the parties had "a deal". To date, however, the Debtor has not executed the Plan Agreement, has not requested any material change to the Plan Agreement, has not filed its own Plan, and has not taken any discernible action to move this Chapter 11 Case forward.

In fact, a review of the Bankruptcy Court's docket demonstrates that the Debtor has done very little during this case - Allerton has almost entirely and single handedly taken the laboring oar in trying to bring this case to conclusion.

On June 15, 2014, the Court conducted a continued status conference wherein the Debtor conveyed a different position, noting that it again disputed Allerton's claim (a complete reversal of its initial support of the Joint Plan, and its prior representation to the Court that the parties had a deal) and that the Debtor was not in a position to move forward with a plan.

In response to the Debtor's "flip flopping" position (and in partial response to the Court's reaction to the Debtor's changed position), Allerton drafted and filed a Third Amended Disclosure Statement and correlating Third Amended Plan of Liquidation, modified several days later through this Fourth Amended Disclosure and a Fourth Amended Plan, which provides for (i) full and immediate payment to Creditors on all Allowed Claims (as of the Petition Date, without interest), and (ii) notwithstanding Equity's actions during this case, the possibility of a very substantial payment thereto.

**B.        OVERVIEW OF ASSETS AND INDEBTEDNESS [4]**

The below is a brief description of the Debtor's primary assets and liabilities.  As stated above, the Debtor's primary assets consist of the Property and, additionally, any leftover funds being held by the Receiver.  As of May 31, 2014, pursuant to the May, 2014 Monthly Operating Report, after payment of all current operating expenses, the Receiver is holding funds which the Debtor might allege is property of its estate, in the approximate amount of $121,000.00, derived from rents.

As stated previously, the Debtor initially scheduled a disputed but otherwise secured obligation due and owing to Allerton in the amount of $2,300,000.00 (Allerton believes that this amount originates from the amount set forth in the Referee's Report, which is over three years old).  It is not clear if the Debtor still disputes Allerton's claim, given its prior consent to the claim amount under the Joint Plan.

Allerton asserts that the amount due and owing to it as of as of February 27, 2014, which was the date of its proof of claim, was approximately $3,425,861.00, not including post petition legal fees (or additional accrued interest since that time). Allerton had previously documented to the Debtor, in its payoff, a complete itemization of its calculations pertaining to the amount due, and has filed a timely claim with the Bankruptcy Court, attaching same.    The accruing per diem is $904.24.

The Debtor's remaining obligations, according to the Debtor's Schedules and Claims filed, is approximately $240,000.00.

**C.        CLAIMS PROCESS AND CLAIMS BAR DATE**

In Chapter 11, claims against a debtor are established either as a result of being listed in a debtor's schedules of assets and liabilities or through assertion by a creditor in a timely filed proof of claim. Claims asserted by a creditor are either allowed or disallowed.  If allowed, a claim would be recognized and treated pursuant to a plan; if disallowed, a creditor would have no right to obtain any recovery on or otherwise enforce the claim against the debtor.

**General and Governmental Bar Dates**

The bar date set for the filing of all claims has passed and was March 17, 2014 (the "Bar Date").  Below, is a listing and analysis of all Claims filed in this case, other than Allerton's Filed Claim:

Claim No. 1
NEW YORK CITY WATER BOARD/DEPT. OF ENV. PROTECTION

---

[4] For more information with respect to the Debtor's assets and liabilities, parties should refer to the Debtor's Schedules, and the Court's claims register.

Claim Amount: $36,916.01
Class: N/A (Governmental Priority Claim)
Disputed by Plan Proponent: No
Status: Timely Filed

Claim No. 2
NEW YORK CITY DEPT. OF FINANCE
Claim Amount: $29,734.93
Class: N/A (Governmental Priority Claim)
Disputed by Plan Proponent: Unknown
Status: Timely Filed

Claim No. 3
HUNTS PT. FUEL
Claim Amount: $11,926.73
Class: General Unsecured Claim/Class 3
Scheduled Amount: $10,340.00
Disputed by Plan Proponent: Yes
Status: Timely Filed

Claim No. 4
NYC ENVIRONMENTAL CONTROL BOARD
Claim Amount: $20,027.43
Class: N/A (Governmental Priority Claim)
Disputed by Plan Proponent: Unknown (possible duplicate)
Status: Timely Filed

Claim No. 5
CITY OF NEW YORK DEPT. OF HOUSING
Claim Amount: $22,038.59
Class: N/A (Governmental Priority Claim)
Disputed by Plan Proponent: Unknown
Status: Timely Filed

Claim No. 6
NYC OFFICE OF ADMINISTRATIVE TRIALS AND HEARINGS
Claim Amount: $13,769.26
Priority: N/A (Governmental Priority Claim)
Disputed by Plan Proponent: Unknown
Status: Timely Filed

Claim No. 7
JULIET R. GREEN
Claim Amount: $30,000.00
Class: General Unsecured Claim/Class 3
Disputed by Plan Proponent: Yes

STUYVESCENT FUEL (scheduled creditor – no claim filed)
Amount: $23,000.00
Class: General Unsecured Claim/Class 3
Disputed by Plan Proponent: Unknown

DOYLE & BROUMMAND, LLP (scheduled creditor – no claim filed)
Amount: $26,773.00
Class: General Unsecured Claim/Class 3
Disputed by Plan Proponent: Unknown

SEVEN STAR FUEL CO. (scheduled creditor – no claim filed)
$26,588.00
Class: General Unsecured Claim/Class 3
Disputed by Plan Proponent: Unknown

TOTAL CLAIMS FILED/SCHEDULED:
$240,773.94

## III.
## SUMMARY OF PLAN

THIS SECTION IS INTENDED ONLY TO PROVIDE A SUMMARY OF THE KEY TERMS, STRUCTURE, CLASSIFICATION, TREATMENT AND IMPLEMENTATION OF THE PLAN, AND IS QUALIFIED IN ITS ENTIRETY BY REFERENCE TO THE ENTIRE PLAN AND EXHIBITS THERETO. THE PLAN ITSELF (INCLUDING ATTACHMENTS) WILL CONTROL THE TREATMENT OF CREDITORS AND EQUITY SECURITY HOLDERS UNDER THE PLAN. TO THE EXTENT THERE ARE ANY INCONSISTENCIES BETWEEN THIS SECTION AND THE PLAN (INCLUDING ATTACHMENTS) THE LATTER SHALL GOVERN

## A.    GENERAL BASIS FOR THE PLAN

Allerton is the proponent of the Plan within the meaning of section 1129 of the Bankruptcy Code. The terms of Allerton's Plan is based upon, among other things, the Debtor's filed schedules, the Claims filed, and Allerton's ability make the distributions contemplated under the Plan. Under the Plan, Claims against and Interests in the Debtor are divided into separate Classes according to their relative seniority, legal nature and other criteria, and the Plan proposes recoveries for Holders of Claims against and Interests in the Debtor in such Classes, if any.

**B.**      **TREATMENT OF UNCLASSIFIED CLAIMS**

Pursuant to and in accordance with section 1123(a)(1) of the Bankruptcy Code, the Debtor has not classified Administrative Claims, Priority Tax Claims and Statutory Fees.

**1.      Administrative Claims**

Administrative Claims are the actual and necessary costs and expenses of the Chapter 11 Case that are Allowed under and in accordance with sections 330, 365, 503(b), 507(a)(1), 507(a)(2) and 507(b) of the Bankruptcy Code. Allowed Administrative Claims do not include Claims filed after the applicable deadline set forth in the Confirmation Order (except as otherwise provided by a separate order of the Bankruptcy Court).

The Plan provides that except to the extent that a Holder of an Allowed Administrative Claim and Allerton agrees to less favorable treatment to such Holder, each Holder of an Allowed Administrative Claim will be paid the full unpaid amount of such Allowed Administrative Claim in Cash:

• on the Effective Date or as soon as reasonably practicable thereafter or, if not then due, when such Allowed Administrative Claim is due or as soon as reasonably practicable thereafter;

• if an Administrative Claim is Allowed after the Effective Date, on the date such Administrative Claim is Allowed or as soon as reasonably practicable thereafter or, if not then due, when such Allowed Administrative Claim is due;

• at such time and upon such terms as may be agreed upon by such Holder and the Debtor, as the case may be; or

• at such time and upon such terms as set forth in an order of the Bankruptcy Court.

Notwithstanding the foregoing, the Plan also provides that Allowed Administrative Claims that arise in the ordinary course of the Debtor's business shall be paid in full in Cash in the ordinary course of business in accordance with the terms and subject to the conditions of any agreements governing, instruments evidencing, or other documents relating to, such transactions.

(a) Requests for Payment of Administrative Claims

Except as otherwise provided in the Plan, unless previously Filed, requests for payment of General Administrative Claims must be Filed and served pursuant to the procedures specified in the Confirmation Order and must be Filed with the Bankruptcy Court and served no later than thirty (30) days from the Effective Date (the "Administrative Claim Bar Date").  Holders of General Administrative Claims that do not File and serve such a request by the applicable Administrative Claims Bar Date shall be forever barred, estopped and enjoined from asserting such General Administrative Claims against Allerton, the Debtor, or the Debtor's Estate, and such Administrative Claims shall be deemed discharged as of the Effective Date.

Allerton may object to any Administrative Claim no later than sixty (60) days from the Administrative Claim Bar Date, subject to extensions by the Bankruptcy Court or on motion of a party in interest approved by the Bankruptcy Court.  Unless the Debtor (or other party with standing) objects to a timely-filed and properly filed and/or served Administrative Claim, such Administrative Claim will be deemed allowed in the amount requested.  In the event that Allerton objects to an Administrative Claim, the parties may confer to try to reach a settlement and, failing that, the Bankruptcy Court will determine whether such Administrative Claim should be allowed and, if so, in what amount.

   (b) Fee Claims

The Plan provides that all final requests of Retained Professionals or other Entities asserting a Fee Claim for services rendered before the date of the Confirmation Hearing shall be filed no later than thirty (30) days after the Effective Date.  After notice and a hearing in accordance with the procedures established by the Bankruptcy Code and prior Bankruptcy Court orders, the Allowed amounts of such Professional Compensation shall be determined by the Bankruptcy Court.

## 2.    Priority Tax Claims

The Plan provides that each Holder of an Allowed Priority Tax Claim due and payable on or prior to the Effective Date shall receive, as soon as reasonably practicable after the Effective Date, on account of, and in full and final satisfaction, settlement, release and discharge of and in exchange for, such Claim: (a) Cash in an amount equal to the amount of such Allowed Priority Tax Claim; (b) Cash in an amount agreed to by the applicable Debtor or Reorganized Debtor, as applicable, and such Holder (although such parties may further agree for the payment of such Allowed Priority Tax Claim at a later date); or (c) at the option of the Debtor, Cash in an aggregate amount of such Allowed Priority Claim payable in installment payments over a period not more than five years after the Commencement Date, pursuant to section 1129(a)(9)(C) of the Bankruptcy Code.

The Plan further provides that any Allowed Priority Tax Claim not due and owing on or before the Effective Date will be paid in full in Cash in accordance with the terms of any agreement between Allerton and such Holder, or as may be due and payable under applicable non-bankruptcy law or in the ordinary course of business.

## 3.    United States Trustee Statutory Fees

The Receiver shall pay all United States Trustee quarterly fees on or before the Effective Date, although nothing herein shall excuse the Debtor from making such payment, in the event the Receiver does not.  Thereafter, Allerton shall pay or cause to be paid all such fees and any applicable interest on all disbursements, under 28 U.S.C. § 1930(a)(6), plus interest due and payable under 31 U.S.C. § 3717 on all disbursements, including Plan payments and disbursements in and outside the ordinary course of the Debtor's business, until the entry of a Final Order, dismissal of the Chapter 11 Case or conversion of the Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code.

## C.      CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

The categories of Claims and Equity Interests listed below classify Claims and Equity Interests for all purposes, including voting, Confirmation and distributions pursuant to the Plan and pursuant to Sections 1122 and 1123(a)(1) of the Bankruptcy Code.  The Plan deems a Claim or Equity Interest to be classified in a particular Class only to the extent that the Claim or Equity Interest qualifies within the description of that Class and shall be deemed classified in a different Class to the extent that any remainder of such Claim or Equity Interest qualifies within the description of such different Class.  A Claim or an Equity Interest is in a particular Class only to the extent that any such Claim or Equity Interest is Allowed in that Class and has not been paid or otherwise settled prior to the Effective Date.

In accordance with section 1122 of the Bankruptcy Code, the Plan places Claims and Interests into one of the four (4) Classes, together with the respective status and voting rights of each Class:

### 1.      Class 1 – Secured Claim of Allerton Fund II LLC

*Classification*:     Class 1 Claim consists of the Secured Claim of Allerton Fund II, LLC secured by a mortgage lien on substantially the Debtor's Real Property located at 624 East 222nd Street, Bronx, New York.

*Treatment:*     Conveyance of the Property in satisfaction of the Secured Claim, upon the Effective Date, including all accrued "per diem" charges.

*Voting Rights:*     Class 1 is Unimpaired; The Holder of Class 1 Claims, as Plan Proponent, has accepted the Plan.

### 2.      Class 2 – Other Priority Claims

*Classification:*     Class 2 Claims shall consist of those Allowed Other Priority Claims accorded priority in right of payment under section 507(a) of the Bankruptcy Code, other than a Claim of a governmental unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

*Treatment:*     Except to the extent that a Holder of a Class 2 Claim has been paid by the Debtor prior to the Effective Date and unless otherwise agreed to by the Plan Proponent and the Holder of an Allowed Class 2 Claim, each Holder of an Allowed Class 2 Claim shall receive in full and final satisfaction of such Allowed Class 2 Claim, payment of the Allowed Class 2 Claim in full in Cash on or as soon as reasonably practicable after the Effective Date.

*Voting Rights:*     Class 2 is Unimpaired, Holders of Class 2 Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, Holders of Class 2 Claims are not entitled to vote to accept or reject the Plan; provided, however, that all Class 2 Claims shall be subject to Allowance under the Plan.

14

3.      **Class 3 – General Unsecured Claims**

*Classification:*          Class 3 shall consist of Allowed General Unsecured Claims.

*Treatment:*              In exchange for full and final satisfaction, settlement, release and
                          discharge of each Allowed General Unsecured Claim against the
                          Debtor (except to the extent that a Holder of an Allowed Other
                          General Unsecured Claim against the Debtor agrees to less
                          favorable treatment), each Holder of an Allowed General
                          Unsecured Claim shall receive on the Effective Date, a cash
                          payment equal to 100% of its Allowed General Unsecured Claim
                          as of the Petition Date, <u>without accrued interest</u>.

*Voting Rights:*          Allerton believes that Class 3 is Impaired.  Class 3 shall be entitled
                          to vote.

4.      **Class 4 – Equity Interests**

*Classification:*          Class 4 shall consist of Allowed Equity Interests in the Debtor.

*Treatment:*              Equity Interest Holders shall receive the balance of the Plan Fund
                          (as defined in section D below) after all other distributions
                          provided under the Plan have been made.  All Equity Interests shall
                          be cancelled upon the Effective Date.

*Voting Rights:*          Class 4 is Impaired; Holders of Class 4 Interests shall be entitled to
                          vote.

## D.      MEANS FOR IMPLEMENTATION OF THE PLAN

### 1.      <u>General Settlement of Claims</u>

Pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in
consideration for the classification, Distributions, releases, and other benefits provided under the
Plan, upon the Effective Date, the provisions of the Plan shall constitute a good faith
compromise and settlements of all Claims and Equity Interests and controversies resolved
pursuant to the Plan.  Distributions made to Holders of Allowed Claims in any Class are intended
to be final.

### 2.      <u>Sources of Cash for Plan Distributions</u>

All cash necessary for payments required by the Plan will be funded from a combination
of cash from Allerton, and remaining cash on hand held by the Receiver on the Effective Date.

Specifically, Allerton shall place into its counsel's trust account cash in the total amount of (and in readily available and cleared funds) $325,000.00 ("Allerton Payment") upon approval of the Disclosure Statement. On the Effective Date, the Receiver shall turnover any and all funds on hand to Allerton's counsel, to be held in trust, and to fund the Plan. As of May 31, 2014, the Receiver was holding approximately $121,000.00, according to the May Operating Report, after payment of all current expenses.

Allerton estimates that the Allerton Payment of $325,000.00, together with the approximate $121,000.00[5] held by the Receiver, in the total estimated amount of $446,000.00 (the "Plan Fund") will be sufficient to pay (i) all Administrative Claims, and namely for allowed legal fees due to Wayne Greenwald P.C. and all accrued U.S. Trustee quarterly fees, plus any additional Allowed Administrative Claims, including those which may be due to Allerton's counsel (by virtue of its substantial contribution to this case), (ii) all priority claims, (iii) all Allowed Unsecured Claims (without interest), and (iv) will yield a significant dividend payable to Equity.

### 3. Means and Conditions for Effectuating Transfer of the Property

The Confirmation Order confirming the Plan shall specifically provide and shall constitute an order of the Bankruptcy Court authorizing and directing the Debtor or transfer agent, upon the occurrence of the Effective Date, to transfer the Property and to close the sale of the Property to Allerton.

At closing, the Property shall be transferred to Allerton upon the terms and conditions and otherwise in accordance with the Plan, and Allerton shall receive:

(a) a deed to the Property purchased in form and substance acceptable to Allerton, executed by the Debtor (or the transfer agent designated in Plan and/or Confirmation Order) to be recorded in the appropriate Register's office (the "Deed"), free and clear of all Liens, Claims and encumbrances, except as otherwise set forth in this Plan;

(b) bill of sale in a form and substance acceptable to Allerton, transferring to Allerton all personal property used in or useful to the operation and maintenance of the Property;

Execution of Documents. On the Effective Date, the Debtor (or a designated transfer agent) is authorized and shall execute, release and deliver all documents reasonably necessary to consummate the transactions contemplated by the terms and conditions of the Plan. Pursuant to Sections 105, 1141 (c) and 1142(b) of the Bankruptcy Code, the Debtor (or a designated transfer agent) shall be authorized to execute any estoppel certificate, or any notice of satisfaction, release or discharge of any Lien, Claim or encumbrance not expressly preserved in this Plan and deliver such notices to any and all federal, state and local governmental agencies or departments for filing and recordation, and the Confirmation Order shall expressly so provide.

---

[5] The Receiver's funds on hand may go slightly up or down from month to month, depending upon expenses, but the balance has consistently stayed between $100,000 and $200,000.00 during this case, according to filed Operating Reports.

4.      **Disbursing Agent/Transfer Agent**

Except as set forth elsewhere in the Plan, all payments required to be made under this Plan shall be made by the Disbursing Agent, which shall be the firm of Ravin Greenberg, LLC.

In the event the Debtor is unable or willing to comply with the provisions of the Plan, or to effect the transfer of the deed and/or Property, the Debtor's counsel, Wayne Greenwald, Esq. is designated under the Plan as the Debtor's attorney-in-fact and transfer agent ("Transfer Agent").  Mr. Greenwald shall be authorized (and directed under to the Confirmation Order) to execute any and all documents necessary to carry out the terms of the Plan on the Debtor's behalf.

5.      **Management of Debtor Post-Confirmation**

On and after the Effective Date, the Debtor shall be dissolved and, therefore, its operations shall not continue.

6.      **Post-Confirmation Reporting and Fees.**

Until the Court issues a Final Decree and closes the Chapter 11 Case, the Debtor, Allerton, and/or Receiver (as the case may be) shall file post-confirmation reports with the Court and pay all related quarterly fees.

7.      **Exemption From Certain Transfer Taxes and Recording Fees**

To the fullest extent permitted by section 1146(a) of the Bankruptcy Code, any transfer of the Property to Allerton, its designee, or to any Entity pursuant to, in contemplation of, or in connection with the Plan or pursuant to: (a) the issuance, distribution, transfer or exchange of any debt, securities or other interest in the Debtor; (b) the creation, modification, consolidation, or recording of any mortgage, deed of trust or other security interest, or the securing of additional indebtedness by such or other means; (c) the making, assignment or recording of any lease or sublease; or (d) the making, delivery or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments, or other instrument of transfer executed in connection with any transaction arising out of, contemplated by or in any way related to the Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee or other similar tax or governmental assessment, and the appropriate state or local governmental officials or agents shall forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

8.      **Effectuating Documents and Further Transactions**

Allerton may take all actions to execute, deliver, file or record such contracts, instruments, releases and other agreements or documents and take such actions as may be

necessary or appropriate to effectuate and implement the provisions of the Plan, including, without limitation, the distribution of the securities to be issued pursuant hereto in the name of and on behalf of the Debtor, without the need for any approvals, authorizations, actions or consents except for those expressly required pursuant hereto, but in no event shall Allerton be deemed a successor to the Debtor.

**9**.       **Release of Liens, Claims and Equity Interests**

Except as otherwise provided in the Plan or in any contract, instrument, release or other agreement or document entered into or delivered in connection with the Plan, on the Effective Date and concurrently with the applicable transfer of Real Property and distributions made pursuant to the Plan, all Claims, mortgages, deeds of trust, liens or other security interests against the property of any Estate shall be fully released and discharged.

**E.       TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

The Plan provides that all Executory Contracts not assumed and assigned to Allerton or the Successful Bidder, as the case may be, shall be deemed rejected as the Effective Date, except for tenant leases (which shall be unaffected by the Plan).  Any party holding a claim arising from the rejection of an Executory Contract shall file a claim with the Bankruptcy Court within thirty (30) days of Confirmation of the Plan.   Allerton is not aware of any existing Executory Contracts, other than tenant leases.

**F.       PROVISIONS GOVERNING DISTRIBUTIONS**

a.       *Distributions for Allowed Claims*

Except as otherwise provided herein or as may be ordered by the Bankruptcy Court, and subject to the establishment of a Disputed Claims Reserve, all distributions with respect to Claims that are Allowed Claims as of the Effective Date shall be made by the Disbursing Agent as set forth in the Plan.

b.       *Distributions on Account of Claims Allowed After the Effective Dat*e

**1.       Payments and Distributions on Disputed Claims**

Notwithstanding any provision herein to the contrary, no partial payments and no partial distributions will be made with respect to a Disputed Claim until the resolution of any such disputes by settlement or Final Order.  On the first Business Day that is 20 calendar days after the end of the calendar quarter in which a Disputed Claim becomes an Allowed Claim, the Holder of such Allowed Claim will receive such payments and distributions to which that Holder is then entitled under the Plan.  In the event Claims require adjudication or other resolution, the Plan Proponent reserves the right to, or shall upon an order of the Bankruptcy Court, establish appropriate reserves for potential payment of any such Claims.

**2.       Special Rules for Distributions to Holders of Disputed Claims**

Notwithstanding any provision otherwise in the Plan and except as otherwise agreed to by the relevant parties, no partial payments and no partial distributions shall be made with respect to any Disputed Claim until all Disputed Claims held by the Holder of such Disputed Claim have become Allowed Claims or have otherwise been resolved by settlement or Final Order.

c.    *Delivery and Distributions*

### 1.    Delivery of Distributions in General

Except as otherwise provided herein, the Disbursing Agent shall make distributions to Holders of Allowed Claims at the address for each such Holder as indicated on the Debtor's Filed schedules as of the date of any such distribution; provided, however, that if such Holder Files a Proof of Claim, the address identified by the Proof of Claim shall be the address for such distribution, and the manner of delivery for such distributions shall be determined at the discretion of the Disbursing Agent.  Nothing herein shall require or be deemed to require the Plan Proponent or the Disbursing Agent to attempt to locate any Holder of an Allowed Claim. Distributions shall be made in accordance with the provisions of the Plan.

### 2.    Minimum Distributions

Notwithstanding anything herein to the contrary, the Disbursing Agent shall not be required to make distributions or payments of less than $25.00 and shall not be required to make partial distributions or payments of fractions of dollars. Whenever any payment or distribution of a fraction of a dollar under the Plan would otherwise be called for, the actual payment or distribution will reflect a rounding of such fraction to the nearest whole dollar, with half dollars or less being rounded down.  Any Holder of an Allowed Claim whose aggregate distribution under this Plan is less than $25.00 shall forfeit, at the option of the Disbursing Agent such amount.

### 3.    Undeliverable Distributions

(i) *Holding of Certain Undeliverable Distributions*

If any distribution to a Holder of an Allowed Claim made in accordance with the Plan is returned to the Disbursing Agent as undeliverable, no further distributions shall be made to such Holder unless and until the Disbursing Agent is notified in writing of such Holder's then current address, at which time all currently due missed distributions shall be made to such Holder on the next Periodic Distribution Date.  Undeliverable distributions shall remain in the possession of the Disbursing Agent until such time as any such distributions become deliverable.

Undeliverable distributions shall not be entitled to any additional interest, dividends or other accruals of any kind on account of their distribution being undeliverable.

### 4.    Compliance with Tax Requirements/Allocations

In connection with the Plan, to the extent applicable, Allerton and/or the Disbursing Agent shall comply with all tax withholding/reporting requirements imposed on it by any governmental unit, and distributions shall be subject to such withholding/reporting requirements.

**5.**     **Timing and Calculation of Amounts to Be Distributed**

Except as otherwise provided in the Plan, on the Effective Date or as soon as reasonably practicable thereafter (or if a Claim is not an Allowed Claim on the Effective Date, on the date that such a Claim becomes an Allowed Claim, or as soon as reasonably practicable thereafter), each Holder of an Allowed Claim shall receive, in one or more payments or deliveries, the full amount of the distributions that the Plan provides for Allowed Claims in the applicable Class. If and to the extent that there are Disputed Claims, distributions on account of any such Disputed Claims shall be made pursuant to the provisions of the Plan.

**6.**     **Setoffs**

The Disbursing Agent may withhold (but not setoff except as set forth below) from the distributions called for in the Plan on account of any Allowed Claim an amount equal to any claims, equity interests, rights and Causes of Action of any nature that the Debtor may hold against the Holder of any such Allowed Claim.

**G.     PROCEDURES FOR RESOLVING DISPUTED, CONTINGENT AND UNLIQUIDATED CLAIMS OR EQUITY INTERESTS**

1.     Resolution of Disputed Claims

(a)     Prosecution of Claims Objections

Allerton shall have the exclusive authority to file objections and to settle, compromise, withdraw or litigate to judgment objections to any and all Claims. From and after the Effective Date, Allerton may settle, compromise or withdraw objections to any Disputed Claim without approval of the Bankruptcy Court or notice to any party.

(b)     Deadline to File Objections to Claims

Any objections to Claims, other than Administrative Claims, shall be filed no later than the Claims Objection Bar Date, which shall be ninety (90) days from the Effective Date. The Claims Objection Bar Date may be extended with Bankruptcy Court approval.

2.     Claims Allowance

Except as expressly provided in the Plan or in any order entered in the Chapter 11 Case prior to the Effective Date (including the Confirmation Order), no Claim shall be deemed Allowed unless and until such Claim is deemed Allowed under the Plan or the Bankruptcy Code or the Bankruptcy Court has entered a Final Order (including the Confirmation Order) in the Chapter 11 Case allowing such Claim. Except as expressly provided by the Plan or any order

entered in the Chapter 11 Case prior to the Effective Date (including the Confirmation Order).

    3.    <u>Disallowance of Claims</u>

**EXCEPT AS OTHERWISE AGREED TO BY THE DEBTOR, ANY AND ALL PROOFS OF CLAIM FILED AFTER MARCH 17, 2014 SHALL BE DEEMED DISALLOWED AND EXPUNGED AS OF THE EFFECTIVE DATE WITHOUT FURTHER NOTICE TO OR ACTION, ORDER OR APPROVAL OF THE BANKRUPTCY COURT, AND HOLDERS OF SUCH CLAIMS MAY NOT RECEIVE ANY DISTRIBUTIONS ON ACCOUNT OF SUCH CLAIMS, UNLESS SUCH LATE PROOF OF CLAIM IS DEEMED TIMELY FILED BY A FINAL ORDER OF THE BANKRUPTCY COURT ON OR BEFORE THE CONFIRMATION HEARING.**

    4.    <u>Amendments to Claims</u>

On or after the Effective Date, except as otherwise provided in the Plan, a Claim may not be re-filed or amended without the prior authorization of the Bankruptcy Court, and any such re-filed or amended Claim shall be deemed disallowed and expunged without any further notice to or action, order or approval of the Bankruptcy Court.

**H.    CONDITIONS PRECEDENT TO CONFIRMATION AND CONSUMMATION OF THE PLAN**

    1.    <u>Conditions Precedent to Confirmation</u>

It shall be a condition precedent to Confirmation of the Plan that

    (a)    all provisions, terms and conditions of the Plan are approved in the Confirmation Order; and

    (b)    the Plan and any Plan Supplement documents, including any amendments, modifications or supplements thereto shall be acceptable to Allerton;

    (c)    Entry of a Confirmation Order acceptable to Allerton; and

    (d)    The Allerton Payment shall have been funded.

    2.    <u>Substantial Consummation</u>

The Plan shall be deemed substantially consummated upon the Effective Date, provided the Property has been transferred.

    3.    <u>Waiver of Conditions</u>

The conditions precedent to Confirmation of the Plan and to Consummation of the Plan

set forth herein may be waived by Allerton (except as they may pertain to funding).

      4.        Effect of Non Occurrence of Conditions to Consummation

If the Consummation of the Plan does not occur, the Plan shall be null and void in all respects and nothing contained in the Plan or the Disclosure Statement shall: (1) constitute a waiver or release of any claims by or Claims against or Equity Interests in the Debtor; (2) prejudice in any manner the rights of Allerton, the Debtor, any Holders or any other Entity; or (3) constitute an admission, acknowledgment, offer or undertaking by Allerton, the Debtor, any Holders or any other Entity in any respect.

      5.        Preservation of Rights of Action/Reservation of Rights

      (a) Maintenance of Causes of Action

Except as otherwise provided in the Plan or Confirmation Order, Allerton shall be conferred and have full and exclusive standing and shall retain all rights to pursue, litigate or settle, as appropriate, any and all Causes of Action including, but not limited to, any Chapter 5 Claims, whether existing as of the Petition Date or thereafter arising, in any court or other tribunal including in an adversary proceeding filed in the Chapter 11 Case.

Allerton may in its sole discretion elect not to pursue any Causes of Action that the Debtor otherwise would have authority to pursue (including Chapter 5 Claims).

Unless a claim or Cause of Action against a Holder of a Claim or an Equity Interest or other Entity is expressly waived, abandoned, relinquished, released, compromised or settled herein or any Final Order (including the Confirmation Order), the Plan Proponent expressly reserves such claim or Cause of Action for later action (including claims and Causes of Action of which Allerton or the Debtor may presently be unaware or which may arise or exist by reason of additional facts or circumstances unknown to the Allerton or the Debtor at this time or facts or circumstances that may change or be different from those Allerton or the Debtor now believes to exist).

For purposes of disclosure, Allerton is unaware of any existing causes of action against third parties.  The Debtor, however, has stated, on the record, that it has a potential claim against the Receiver.   The basis for this claim is unknown.

**I.     SETTLEMENT, EXCULPATION, AND RELATED PROVISIONS**

The Plan provides that all Holders of Claims who vote for the Plan discharge and release Allerton (as Plan Proponent), its successors and assigns, and its agents, including its attorneys, and **Debtor, its agents and attorneys** from any and all causes of action existing as of the Effective Date in law, at equity, whether for tort or under contract, or otherwise, arising from or related in any way to the Debtor.

**J.     BINDING NATURE OF PLAN**

The provisions of the Plan shall bind all Holders of Claims and Interests and their

respective successors and assigns.

## K.    RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall, after the Effective Date, retain such jurisdiction over the Chapter 11 Case, and all matters related to the Chapter 11 Case, Allerton, the Debtor and the Plan as legally permissible.

## L.    MISCELLANEOUS PROVISIONS

### 1.    Payment of Statutory Fees and Post Confirmation Reporting

All fees, and any applicable interest, payable pursuant to 28 U.S.C. § 1930 after the Effective Date shall be paid prior to the closing of the Chapter 11 Case when due or as soon thereafter as practicable.  Additionally, Allerton will file or cause to be filed all Post Confirmation Reports, as applicable.

### 2.    Modification of Plan

Allerton reserves the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules, to amend or modify the Plan prior to the entry of the Confirmation Order. After the entry of the Confirmation Order, Allerton, may, upon order of the Bankruptcy Court, amend or modify the Plan, in accordance with section 1127(b) of the Bankruptcy Code or remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan.

### 3.    Revocation of Plan

Allerton reserves the right to revoke or withdraw the Plan prior to the Confirmation Date and to file subsequent chapter 11 plans.

### 4.    Successors and Assigns

The rights, benefits and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such Entity.

### 5.    Reservation of Rights

Except as expressly set forth in the Plan, the Plan shall have no force or effect unless and until the Bankruptcy Court enters the Confirmation Order.

### 6.    Further Assurances

All Holders of Claims receiving distributions under the Plan and all other Entities shall, from time to time, prepare, execute and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan or the

Confirmation Order.

      7.    <u>Severability</u>

If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision then will be applicable as altered or interpreted, provided that any such alteration or interpretation must be in form and substance acceptable to Allerton.

      8.    <u>Filing of Additional Documents</u>

On or before the Effective Date, Allerton may file with the Bankruptcy Court all agreements and other documents that may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

## IV.
## <u>VOTING PROCEDURES</u>

      1.    <u>Ballot Tabulation</u>

The following voting procedures and standard assumptions will be used in tabulating ballots, and shall be applicable to holders of Claims in Class 3:

      (a)    a Claim will be deemed temporarily counted for voting purposes in an amount equal to (i) if a timely filed Proof of Claim has not been filed, the undisputed amount of such Claim as set forth in the Schedules filed by the Debtor, or (ii) the amount of such Claim as set forth in a timely filed Proof of Claim;

      (b)    if a Claim for which a Proof of Claim has been timely filed is marked in the Schedules in whole or in part as contingent, unliquidated or disputed on its face, such portion of the Claim that is marked as contingent, unliquidated or disputed will be temporarily allowed for voting purposes in the amount of $1.00;

      (c)    if a Claim has been estimated or otherwise allowed for voting purposes by order of the Court, such Claim will be temporarily allowed for voting purposes in the amount so estimated or allowed by the Court;

      (d)    if a Claim is listed in the Schedules as contingent, unliquidated or disputed, such Claim will be disallowed for voting purposes (this shall not be applicable to Allerton as Plan Proponent);

      (e)    if Allerton has filed and served an objection to a Claim at least ten (10) days

before the Voting Deadline, such claim will be temporarily allowed or disallowed for voting purposes in accordance with the relief sought in the objection; and

(f)    if a Holder of a Claim identifies a Claim amount on its Ballot that is less than the amount otherwise calculated in accordance with this section, the Claim will be temporarily counted for voting purposes in the lesser amount identified on such Ballot.

## V.
## CONFIRMATION PROCEDURES

### A.    CONFIRMATION HEARING

The Confirmation Hearing will commence on [_____, 2014 at __:00___.m.].    The Plan Objection Deadline is[_____, 2014, at :00    m].

All objections to the Plan must be filed with the Bankruptcy Court and served on Allerton and the Debtor and certain other parties in accordance with the Disclosure Statement Order on or before the Plan Objection Deadline.

Allerton's proposed schedule will provide Entities sufficient notice of the Plan Objection Deadline, which will be at least 28 days as required by Bankruptcy Rule 2002(b).    Allerton believes that the Plan Objection Deadline will afford the Bankruptcy Court, Allerton, the Debtor, and other parties in interest reasonable time to consider the Plan Objections prior to the Confirmation Hearing.

**THE BANKRUPTCY COURT WILL NOT CONSIDER PLAN OBJECTIONS UNLESS THEY ARE TIMELY-SERVED AND FILED IN COMPLIANCE WITH THE DISCLOSURE STATEMENT ORDER.**

### B.    STATUTORY REQUIREMENTS FOR CONFIRMATION OF THE PLAN

At the Confirmation Hearing, the Bankruptcy Court will determine whether the Plan satisfies the requirements of section 1129 of the Bankruptcy Code.    Allerton believes that: (1) the Plan satisfies or will satisfy all of the necessary statutory requirements of chapter 11 of the Bankruptcy Code; (2) Allerton has complied or will have complied with all of the necessary requirements of chapter 11 of the Bankruptcy Code; and (3) the Plan has been proposed in good faith.    Specifically, in addition to others, as applicable, Allerton believes that the Plan satisfies or will satisfy the applicable Confirmation requirements of section 1129 of the Bankruptcy Code.

### 1.    Best Interests of Creditors Test/Liquidation Analysis

Pursuant to section 1129(a)(7) of the Bankruptcy Code, for the Plan to be confirmed, it must provide that holders of claims or equity interests will receive at least as much under a plan as they would receive in a liquidation of the debtor under chapter 7 of the Bankruptcy Code (the "Best Interest Test").    The Best Interest Test with respect to each impaired class requires that each holder of an allowed claim or equity interest of such class either: (i) accepts the plan; or (ii) receives or retains under the plan property of a value, as of the effective date, that is not less than

the value such holder would receive or retain if the debtor was liquidated under chapter 7 of the Bankruptcy Code.  The Bankruptcy Court will determine whether the value received under the Plan by the Holders of Allowed Claims in each Class or Equity Interests equals or exceeds the value that would be allocated to such Holders in a liquidation under chapter 7 of the Bankruptcy Code.

Allerton believes that the Plan meets the Best Interest Test and provides value which is not less than that which would be recovered by each such Holder in a chapter 7 bankruptcy proceeding or proceedings.  Generally, to determine what Holders of Allowed Claims and Equity Interests in each impaired Class would receive if the Debtor was liquidated, the Bankruptcy Court must determine what funds would be generated from the liquidation of Debtor's assets and properties in the context of a chapter 7 liquidation case for the Debtor, which for unsecured creditors would consist of the proceeds resulting from the disposition of the assets of Debtor, augmented by the unencumbered Cash held by Debtor at the time of the commencement of the liquidation case.  Such Cash amounts would be reduced by the costs and expenses of the liquidation and the use of chapter 7 for the purpose of liquidation.

In a chapter 7 liquidation, Holders of Allowed Claims would receive distributions based on the liquidation of the non-exempt assets of Debtor.  Here, the Plan provides for full payment of all Allowed Claims (without interest) on the Effective Date.  Allerton believes that, as a result of the absolute Assignment of Rents executed in connection with the Loan Documents, Allerton has a valid legal argument that the funds being held by the Receiver are not property of the Debtor's estate.  In a chapter 7 liquidation, the Property would be sold.  There is no guarantee that all creditors would be paid in full or that the funds held by the Receiver could be used to make distributions to creditors.

Allerton is not aware of any other assets that would be available for liquidation that could be used to make any payment to Allowed Claims or Equity Interest Holders.  Moreover, to the extent there were some additional limited assets, the net proceeds from the collection of property of the Estate available for distribution to Creditors would be reduced by any commission payable to the chapter 7 trustee and the fees for the trustee's attorneys, accountants and other professionals, as well as the administrative costs of the Chapter 11 Estate (such as the compensation for the Retained Professionals).  In a chapter 7 case, a chapter 7 trustee would be entitled to seek a sliding scale commission based upon the funds distributed by such trustee to creditors, even though the Estate will have already accumulated much of the funds and the Estate will have already incurred many of the expenses associated with generating those funds.  Accordingly, there is a reasonable likelihood that creditors would "pay again" for the funds accumulated by the Estate because a chapter 7 trustee would be entitled to receive a commission in some amount for all funds distributed from the Estate.

It is further anticipated that a chapter 7 liquidation case would result in delay in the payment to creditors.  Among other things, a chapter 7 case could trigger a new bar date for filing Claims that would be more than ninety (90) days following conversion of the Chapter 11 Cases to chapter 7. Fed. R. Bankr. P. 3002(c).  Hence, chapter 7 liquidation would not only delay distribution but raise the prospect of additional claims that were not asserted in the Chapter 11 Case.  UNDER ALLERTON'S PLAN, HOLDERS OF ALL ALLOWED CLAIMS ARE GETTING PAID IN FULL ON THEIR CLAIMS AS OF THE PETITION DATE, even though

the payment is without interest.  There is no guarantee that a chapter 7 liquidation, through a sale of the Property, would yield better or the same results.

**2.**      **Feasibility**

Section 1129(a) (11) of the Bankruptcy Code requires the Bankruptcy Court to find, as a condition to confirmation, that confirmation is not likely to be followed by the Debtor's liquidation or the need for further financial reorganization, unless that liquidation or reorganization is contemplated by the Plan.  Prior to Confirmation, sufficient funds will be on hand to make all payments required by the Plan.

**3.**      **Acceptance by Impaired Classes**

The Bankruptcy Code requires, as a condition to confirmation, that, except as described in the following section, each class of claims or equity interests that is impaired under a plan, accept the plan. A class that is not "impaired" under a plan is deemed to have accepted the plan and, therefore, solicitation of acceptances with respect to such class is not required.  A class is "impaired" unless the plan: (a) leaves unaltered the legal, equitable and contractual rights to which the claim or the equity interest entitles the holder of such claim or equity interest; or (b) cures any default, reinstates the original terms of such obligation, compensates the holder for certain damages or losses, as applicable, and does not otherwise alter the legal, equitable or contractual rights to which such claim or equity interest entitles the holder of such claim or equity interest.

Section 1126(c) of the Bankruptcy Code defines acceptance of a plan by a class of impaired claims as acceptance by holders of at least two-thirds in dollar amount and more than one-half in number of allowed claims in that class, counting only those claims that actually voted to accept or to reject the plan.  Thus, a class of claims will have voted to accept the plan only if two-thirds in amount and a majority in number actually voting cast their ballots in favor of acceptance. For a class of impaired equity interests to accept a plan, section 1126(d) of the Bankruptcy Code requires acceptance by equity interest holders that hold at least two-thirds in amount of the allowed equity interests of such class, counting only those equity interests that actually voted to accept or reject the plan.

**4.**      **Confirmation Without Acceptance by All Impaired Classes**

Section 1129(b) of the Bankruptcy Code allows a bankruptcy court to confirm a plan even if all impaired classes have not accepted it, <u>provided</u> that the plan has been accepted by at least one impaired class.  Pursuant to section 1129(b) of the Bankruptcy Code, notwithstanding an impaired class's rejection or deemed rejection of the plan, such plan will be confirmed, at the plan proponent's request, in a procedure commonly known as "cramdown," so long as the plan does not "discriminate unfairly" and is "fair and equitable" with respect to each class of claims or equity interests that is impaired under, and has not accepted, the plan.

(a)      <u>No Unfair Discrimination</u>

This test applies to classes of claims or equity interests that are of equal priority and are

27

receiving different treatment under the Plan.  The test does not require that the treatment be the same or equivalent, but that such treatment be "fair."  In general, bankruptcy courts consider whether a plan discriminates unfairly in its treatment of classes of claims of equal rank (*e.g.,* classes of the same legal character).  Bankruptcy courts will take into account a number of factors in determining whether a plan discriminates unfairly, and, accordingly, a plan could treat two classes of unsecured creditors differently.

(b)    <u>Fair and Equitable Test</u>

This test applies to classes of different priority and status (*e.g.*, secured versus unsecured) and includes the general requirement that no class of claims receive more than 100% of the amount of the allowed claims in such class.  As to the dissenting class, the test sets different standards depending upon the type of claims or equity interests in such class.

*Secured Claims:* The condition that a plan be "fair and equitable" to a non-accepting class of secured claims includes the requirements that: (1) the holders of such secured claims retain the liens securing such claims to the extent of the allowed amount of the claims, whether the property subject to the liens is retained by the debtor or transferred to another entity under the plan; and (2) each holder of a secured claim in the class receives deferred cash payments totaling at least the allowed amount of such claim with a value, as of the effective date of the plan, at least equivalent to the value of the secured claimant's interest in the debtor's property subject to the liens.

*Unsecured Claims:* The condition that a plan be "fair and equitable" to a non-accepting class of unsecured claims includes the following requirement that either: (1) the plan provides that each holder of a claim of such class receive or retain on account of such claim property of a value, as of the effective date of the plan, equal to the allowed amount of such claim; or (2) the holder of any claim or any equity interest that is junior to the claims of such class will not receive or retain under the plan on account of such junior claim or junior equity interest any property.

*Equity Interests:* The condition that a plan be "fair and equitable" to a non-accepting class of equity interests includes the requirements that either: (1) the plan provides that each holder of an equity interest in that class receives or retains under the plan on account of that equity interest property of a value, as of the effective date of the plan, equal to the greater of: (a) the allowed amount of any fixed liquidation preference to which such holder is entitled; (b) any fixed redemption price to which such holder is entitled; or (c) the value of such interest; or (2) if the class does not receive the amount as required under (1) hereof, no class of equity interests junior to the non-accepting class may receive a distribution under the plan.

If any Impaired Class rejects the Plan, Allerton reserves the right to seek to confirm the Plan utilizing the "cramdown" provision of section 1129(b) of the Bankruptcy Code. To the extent that any Impaired Class rejects the Plan or is deemed to have rejected the Plan, the Debtor will request confirmation of the Plan, as it may be modified from time to time, under section 1129(b) of the Bankruptcy Code.  Allerton reserves the right to alter, amend, modify, revoke or withdraw the Plan or any Plan Supplement, including to amend or modify it to satisfy the requirements of section 1129(b) of the Bankruptcy Code.

C.    **CONTACT FOR MORE INFORMATION**

Any interested party desiring further information about the Plan should contact counsel to Allerton, Ravin Greenberg, LLC, 101 Eisenhower Parkway, Roseland, New Jersey 07068, Attn: Chad B. Friedman and Brian L. Baker, Tel: (973) 226-1500.

**VI.**

**PLAN-RELATED RISK FACTORS AND ALTERNATIVES
TO CONFIRMATION AND CONSUMMATION OF THE PLAN**

**THE IMPLEMENTATION OF THE PLAN IS SUBJECT TO A NUMBER OF RISKS, INCLUDING THOSE ENUMERATED BELOW. ALL HOLDERS OF CLAIMS AND EQUITY INTERESTS THAT ARE IMPAIRED AND ENTITLED TO VOTE ON THE PLAN SHOULD READ AND CONSIDER CAREFULLY THE FACTORS SET FORTH HEREIN, AS WELL AS ALL OTHER INFORMATION SET FORTH OR OTHERWISE REFERENCED IN THIS DISCLOSURE STATEMENT AND OTHER DOCUMENTS DELIVERED TOGETHER HEREWITH AND/OR INCORPORATED BY REFERENCE HEREIN. THESE RISK FACTORS SHOULD NOT, HOWEVER, BE REGARDED AS CONSTITUTING THE ONLY RISKS INVOLVED IN CONNECTION WITH THE PLAN AND ITS IMPLEMENTATION, OR ALTERNATIVES TO THE PLAN**.

A.    **GENERAL BANKRUPTCY LAW AND PLAN-RELATED CONSIDERATIONS**

1.    Parties in Interest May Object to the Classification of Claims and Equity Interests

Section 1122 of the Bankruptcy Code provides that a plan may place a claim or an equity interest in a particular class only if such claim or equity interest is substantially similar to the other claims or equity interests in such class. Allerton believes that the classification of Claims and Equity Interests under the Plan complies with the requirements set forth in the Bankruptcy Code because Allerton created certain Classes of Claims and Equity Interests, each encompassing Claims or Equity Interests, as applicable, that are substantially similar to the other Claims and Equity Interests in each such Class. Nevertheless, there can be no assurance that the Bankruptcy Court will reach the same conclusion.

2.    Allerton May Not Be Able to Secure Confirmation of the Plan or Confirmation May Be Delayed

Section 1129 of the Bankruptcy Code sets forth the requirements for confirmation of a chapter 11 plan, and requires, among other things, a finding by the bankruptcy court that: (a) such plan "does not unfairly discriminate" and is "fair and equitable" with respect to any non-accepting classes; and (b) the value of distributions to non-accepting holders of claims and equity interests within a particular class under such plan will not be less than the value of distributions such holders would receive if the debtor was liquidated under chapter 7 of the Bankruptcy Code.

There can be no assurance that the Plan will be confirmed. The Bankruptcy Court could still decline to confirm the Plan if it found that any of the statutory requirements for Confirmation had not been met, including the requirement that the terms of the Plan do not "unfairly discriminate" and are "fair and equitable" to non-accepting Classes. The Confirmation and Consummation of the Plan also are subject to certain other conditions. No assurance can be given that these conditions will be satisfied.

If the Plan is not confirmed in a timely manner, it is unclear what Holders of Claims would ultimately receive in respect of their Claims.

      3.    <u>Allerton May Object to the Amount or Classification of a Claim</u>

Except as otherwise provided in the Plan, Allerton reserves the right to object to the amount or classification of any Claim under the Plan.  The estimates set forth in this Disclosure Statement cannot be relied on by any Holder of a Claim where such Claim is subject to an objection or dispute.  Any Holder of a Claim that is subject to an objection thus may not receive its expected share of the estimated distributions described in this Disclosure Statement.

## B.      DISCLOSURE STATEMENT DISCLAIMER

The information contained in this Disclosure Statement is for purposes of soliciting acceptances of the Plan and may not be relied upon for any other purposes.  <u>No Legal or Tax Advice Is Provided to You by this Disclosure Statement</u>.  This Disclosure Statement is not legal advice to you.  The contents of this Disclosure Statement should not be construed as legal, business or tax advice.  Each Holder of a Claim or an Equity Interest should consult his or her own legal counsel and accountant with regard to any legal, tax and other matters concerning his or her Claim or Equity Interest.  This Disclosure Statement may not be relied upon for any purpose other than to determine how to vote on the Plan or object to Confirmation of the Plan.

The information and statements contained in this Disclosure Statement will neither (a) constitute an admission of any fact or liability by any Entity (including, without limitation, Allerton) nor (b) be deemed evidence of the tax or other legal effects of the Plan on Allerton, the Debtor, Holders of Allowed Claims or Equity Interest or any other parties in interest.

No reliance should be placed on the fact that a particular litigation claim or projected objection to a particular Claim or Equity Interest is, or is not, identified in this Disclosure Statement.  Counsel to Allerton and other advisors retained by Allerton have relied upon information solely provided by the Debtor, the Receiver, and filings with the Bankruptcy Court in connection with the preparation of this Disclosure Statement.

The statements contained in this Disclosure Statement are made by Allerton as of the date hereof, unless otherwise specified herein, and the delivery of this Disclosure Statement after that date does not imply that there has not been a change in the information set forth herein since that date.  While Allerton has used its reasonable business judgment to ensure the accuracy of all of the information provided in this Disclosure Statement and in the Plan, the Debtor nonetheless cannot, and does not, confirm the current accuracy of all statements appearing in this Disclosure

Statement.  Further, although Allerton may subsequently update the information in this Disclosure Statement, Allerton has no affirmative duty to do so unless ordered to do so by the Bankruptcy Court.

## C.    ALTERNATIVES TO CONFIRMATION AND CONSUMMATION OF THE PLAN

As set forth above, if the Plan is not confirmed, the Debtor's Chapter 11 Case could be converted to a liquidation case under chapter 7 of the Bankruptcy Code.  Alternatively, the Debtor or other parties in interest may seek confirmation of an alternative plan of reorganization under chapter 11 of the Bankruptcy Code.  In chapter 7 liquidation, a trustee would be appointed to promptly liquidate the assets of the Debtor.

Allerton believes that in a liquidation under chapter 7, before creditors received any distributions, additional administrative expenses involved in the appointment of a trustee and attorneys, accountants, and other professionals to assist such trustee, along with an increase in expenses associated with a possible increase in the number of unsecured claims that would be expected, would cause a substantial diminution in the value of the Estate.  Moreover, in a chapter 7 proceeding, Allerton believes that it would be able to obtain relief from the automatic stay to permit it to continue to proceed with its foreclosure action resulting in no benefit to creditors.  The assets available for distribution to creditors and equity holders would be reduced by such additional expenses and by Claims, some of which would be entitled to priority, which would arise by reason of the liquidation.  A more thorough discussion of the effects that a chapter 7 liquidation would have on the recoveries of Holders of Claims is set forth above in this Section.

## VII.
## RECOMMENDATION

In Allerton opinion, the Plan is preferable to any other alternatives because it provides for payment to creditors within a short time period, and the likelihood of a distribution to Equity.

Respectfully submitted,

/s/ Morris Piller
Managing Member
Allerton Fund II LLC

Dated:  June 25, 2014