**RAVIN GREENBERG LLC**
Jaimie A. Slosberg, Esq.
Chad B. Friedman, Esq.
101 Eisenhower Parkway
Roseland, New Jersey 07068
Telephone: (973) 226-1500
Facsimile: (973) 226-6888

*Counsel for Allerton Fund II LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
---------------------------------------------------------X
                                                        :
In re:                                                  :          Chapter 11
                                                        :
**624 EAST 222ND STREET, LLC,**                         :          Case No.: 12-13992 (rg)
                                                        :
              Debtor.                                   :
---------------------------------------------------------X

---

**FOURTH AMENDED PLAN OF LIQUIDATION UNDER CHAPTER 11 OF THE
BANKRUPTCY CODE PROPOSED BY ALLERTON FUND II LLC**

---

# **TABLE OF CONTENTS**

**Page**

ARTICLE I. RULES OF INTERPRETATION, COMPUTATION OF TIME, GOVERNING LAW AND DEFINED
TERMS................................................................................................................................1

    A.   Rules of Interpretation, Computation of Time and Governing Law .................................. 1
    B.   Defined Terms ................................................................................................................ 2

ARTICLE II. ADMINISTRATIVE CLAIMS AND PRIORITY TAX CLAIMS AND UNITED STATES TRUSTEE
STATUTORY FEE ................................................................................................................9

    A.   Administrative Claims .................................................................................................... 9
    B.   Priority Tax Claims ...................................................................................................... 10
    C.   United States Trustee Statutory Fees ............................................................................ 10

ARTICLE III. CLASSIFICATION AND TREATMENT OF CLASSIFIED CLAIMS
AND EQUITY INTERESTS ....................................................................................................11

    A.   Classification and Treatment of Claims against and Equity Interests in the Debtor. ....... 11
    B.   Special Provision Governing Unimpaired Claims .......................................................... 13~~12~~

ARTICLE IV. ACCEPTANCE OR REJECTION OF THE PLAN.......................................................... 13~~12~~

    A.   Presumed Acceptance of Plan ...................................................................................... 13~~12~~
    B.   Voting Classes ............................................................................................................. 13
    C.   Acceptance by Impaired Classes of Claims .................................................................. 13
    D.   Controversy Concerning Impairment ........................................................................... 13
    E.   Cramdown .................................................................................................................... 13

ARTICLE V. MEANS FOR IMPLEMENTATION OF THE PLAN ........................................................ 14~~13~~

    A.   General Settlement of Claims ....................................................................................... 14~~13~~
    B.   Sources of Cash for Plan Distributions ........................................................................ 14
    C.   Disbursing Agent/Transfer Agent ................................................................................ 16~~15~~
    D.   Management of Debtor Post-Confirmation ................................................................... 16~~15~~
    E.   Post-Confirmation Reporting ....................................................................................... 16~~15~~
    F.   Exemption from Certain Transfer Taxes ...................................................................... 16~~15~~
    G.   Release of Liens, Claims and Equity Interests .............................................................. 16

ARTICLE VI. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES.................... 17~~16~~

ARTICLE VII. PROVISIONS GOVERNING DISTRIBUTIONS ........................................................... 17~~16~~

    A.   Distributions for Allowed Claims ................................................................................. 17~~16~~
    B.   Distributions on Account of Claims Allowed After the Effective Date ........................... 17~~16~~
    C.   Delivery and Distributions and Undeliverable or Unclaimed Distributions ................... 18~~17~~

ARTICLE VIII. PROCEDURES FOR RESOLVING DISPUTED, CONTINGENT AND UNLIQUIDATED
CLAIMS OR EQUITY INTERESTS..........................................................................................19~~18~~

    A.   Resolution of Disputed Claims ..................................................................................... 19~~18~~
    B.   Claims Allowance ........................................................................................................ 19~~18~~
    C.   Controversy Concerning Impairment ........................................................................... 19~~18~~
    D.   Disallowance of Claims ............................................................................................... 19~~18~~
    E.   Amendments to Claims ................................................................................................ 20~~19~~

ARTICLE IX. CONDITIONS PRECEDENT TO CONFIRMATION AND CONSUMMATION OF THE PLAN
.................................................................................................................................... 20~~19~~

    A.   Conditions Precedent to Confirmation................................................... 20~~19~~
    B.   Substantial Consummation ....................................................................... 20~~19~~
    C.   Waiver of Conditions ............................................................................... 20~~19~~
    D.   Effect of Non-Occurrence of Conditions to Consummation ....................... 20~~19~~

ARTICLE X. SETTLEMENT, EXCULPATION, AND RELATED PROVISIONS ................................... 21~~20~~

    A.   Compromise and Settlement ..................................................................... 21~~20~~
    B.   Exculpated Parties and Releasing Parties ................................................. 21~~20~~
    C.   Exculpation .............................................................................................. 21~~20~~
    D.   Preservation of Rights of Action / Reservation of Rights............................ 22~~21~~

ARTICLE XI. BINDING NATURE OF PLAN ....................................................................... 23~~22~~

ARTICLE XII. RETENTION OF JURISDICTION .................................................................. 23~~22~~

ARTICLE XIII. MISCELLANEOUS PROVISIONS .................................................................. 23~~22~~

    A.   Modification of Plan ................................................................................ 23~~22~~
    B.   Revocation of Plan .................................................................................. 23~~22~~
    C.   Successors and Assigns ............................................................................ 24~~23~~
    D.   Reservation of Rights ............................................................................... 24~~23~~
    E.   Further Assurances .................................................................................. 24~~23~~
    F.   Severability ............................................................................................. 24~~23~~
    G.   Service of Documents .............................................................................. 25~~24~~
    H.   Filing of Additional Documents .............................................................. 25~~24~~

**FOURTH AMENDED PLAN OF LIQUIDATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE PROPOSED BY ALLERTON FUND II LLC**

Allerton Fund II LLC ("Allerton"), a secured and the largest creditor of 624 East 222nd Street, LLC, the above-captioned debtor and debtor in possession (the "Debtor") hereby respectfully proposes the following plan under chapter 11 of the Bankruptcy Code.

## ARTICLE I.

## RULES OF INTERPRETATION, COMPUTATION OF TIME, GOVERNING LAW AND DEFINED TERMS

A.    *Rules of Interpretation, Computation of Time and Governing Law*

1.    For purposes herein: (a) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine or neuter gender shall include the masculine, feminine and the neuter gender; (b) any reference herein to a contract, lease, instrument, release or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (c) any reference herein to an existing document or exhibit having been filed or to be filed shall mean that document or exhibit, as it may thereafter be amended, modified or supplemented; (d) unless otherwise specified, all references herein to "Articles" are references to Articles hereof or hereto; (e) unless otherwise stated, the words "herein," "hereof" and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (f) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation hereof; (g) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (h) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be; and (i) all footnotes contained herein shall constitute a part of the Plan and shall have the same force and effect as if they were included in the text of the Plan.

2.    The provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein.

3.    Except to the extent that the Bankruptcy Code or Bankruptcy Rules apply, and subject to the provisions of any contract, lease instrument, release or other agreement or document entered into in connection herewith, the rights and obligations arising hereunder shall be governed by, and construed and enforced in accordance with, the laws of the State of New York, without giving effect to the principles of conflict of laws thereof.

B.    *Defined Terms*

Unless the context otherwise requires, the following terms shall have the following meanings when used in capitalized form herein:

1.    *"Accrued Professional Compensation"* means, at any given moment, all accrued, contingent and/or unpaid fees and expenses (including success fees and Allowed Fee Claims) for legal, financial, advisory, accounting and other services and reimbursement of expenses that are awardable and allowable under sections 328, 330(a) or 331 of the Bankruptcy Code or otherwise rendered prior to the Confirmation Date by any Retained Professionals in the Chapter 11 Cases that the Bankruptcy Court has not denied by a Final Order, to the extent that any such fees and expenses have not been previously paid regardless of whether a fee application has been Filed for any such amount. To the extent that the Bankruptcy Court or any higher court denies or reduces by a Final Order any amount of a Retained Professional's fees or expenses, then those reduced or denied amounts shall no longer constitute Accrued Professional Compensation.

2.    *"Administrative Claim"* means any Claim for costs and expenses of administration of the Estate under sections 503(b), 507(b) or 1114(e)(2) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses incurred after the Petition Date of preserving the Estate and operating the businesses of the Debtor and (b) Claims arising under section 503(b)(9) of the Bankruptcy Code.    This expressly includes any claim(s) filed by Allerton's counsel for substantial contribution to the within case.

3.    *"Administrative Claims Bar Date"* means (i) the first Business Day that is 30 days following the Effective Date.

4.    *"Affiliate"* has the meaning set forth in section 101(2) of the Bankruptcy Code.

5.    *"Allowed"* means with respect to Claims: (a) any Claim proof of which is timely Filed by the applicable Claims Bar Date (or for which Claim under the Bankruptcy Code or Final Order of the Bankruptcy Court a Proof of Claim is or shall not be required to be Filed); (b) any Claim that is listed in the Schedules as not contingent, not unliquidated and not disputed, and for which no Proof of Claim has been timely Filed; or (c) any Claim Allowed pursuant to the Plan; provided, however, that with respect to any Claim described in clauses (a) and (b) above, such Claim shall be considered Allowed only if and to the extent that with respect to any Claim (i) no objection to the allowance thereof has been interposed within the applicable period of time fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court or (ii) regardless of whether such an objection is so interposed, the Claim shall have been Allowed by a Final Order. Any Claim that has been or is hereafter listed in the Schedules as contingent, unliquidated or disputed, and for which no Proof of Claim is or has been timely Filed, is not considered Allowed and shall be expunged without further action by the Debtor and without further notice to or action, approval or order of the Bankruptcy Court.

6.    *"Allowed Secured Claim of Allerton Fund II LLC"* means the Allowed Claim of Allerton Fund II LLC, secured by a valid, properly perfected, unavoidable, first priority lien on

2

the Debtor's property.  As of February 27, 2014, the Allowed Secured Claim of Allerton Fund II, LLC was $3,425,861.00 and such claim accumulates a "per diem" charge of $904.24 until such claim is paid.   The Allowed Claim of Allerton Fund II LLC shall be deemed an Allowed Claim without further Order of the Bankruptcy Court and without the need to file a claim on the case claims register.   The amount set forth herein does not include post petition attorneys fees, which may be allowed pursuant to the further Order of the Bankruptcy Court.

7.  *"Avoidance Actions"* means any and all avoidance, recovery, subordination or other actions or remedies that may be brought on behalf of the Debtor or its Estate under the Bankruptcy Code or applicable non-bankruptcy law, including actions or remedies under sections 510, 542, 543, 544, 545, 547, 548, 549, 550, 551, 552, 553(b) and 724(a) of the Bankruptcy Code.

8.  *"Bankruptcy Code"* means Title 11 of the United States Code, 11 U.S.C. §§ 101-1532, as applicable to the Chapter 11 Case.

9.  *"Bankruptcy Court"* means the United States Bankruptcy Court for the Southern District of New York having jurisdiction over the Chapter 11 Case and, to the extent of the withdrawal of any reference under 28 U.S.C. § 157 and/or the order of the United States District Court for the Southern District of New York, the United States District Court for the Southern District of New York.

10. *"Bankruptcy Rules"* means the Federal Rules of Bankruptcy Procedure, as applicable to the Chapter 11 Case, promulgated under 28 U.S.C. § 2075 and the general, local and chambers rules of the Bankruptcy Court.

11. *"Beneficiaries"* means the Holders of Claims that are to be satisfied through post-Effective Date distributions from the Plan as provided herein.

12. *"Business Day"* means any day, other than a Saturday, Sunday or "legal holiday" (as defined by Bankruptcy Rule 9006(a)).

13. *"Cash"* means the legal tender of the United States of America or the equivalent thereof, including bank deposits, checks and Cash Equivalents.

14. *"Cash Equivalents"* means equivalents of Cash in the form of readily marketable securities or instruments issued by an Entity, including readily marketable direct obligations of, or obligations guaranteed by, the United States of America, commercial paper of domestic corporations carrying a Moody's rating of "P2" or better, or equivalent rating of any other nationally recognized rating service, or interest bearing certificates of deposit or other similar obligations of domestic banks or other financial institutions having a shareholders' equity or capital of not less than one hundred million dollars ($100,000,000) having maturities of not more than one year, at the then generally prevailing rates of interest for like amounts and like periods.

15. *"Causes of Action"* means all actions, causes of action, Claims, Chapter 5 Claims (*Avoidance Actions)*, liabilities, obligations, rights, suits, debts, damages, judgments, remedies,

demands, setoffs, defenses, recoupments, crossclaims, counterclaims, third-party claims, indemnity claims, contribution claims or any other claims that the Debtor or its Estate may hold or be entitled to assert, whether disputed or undisputed, suspected or unsuspected, foreseen or unforeseen, direct or indirect, choate or inchoate, existing or hereafter arising, in law, equity or otherwise, based in whole or in part upon any act or omission or other event occurring prior to the Petition Date or during the course of the Chapter 11 Case, through and including the Effective Date.

16. "*Chapter 11 Case*" means the chapter 11 case pending for the Debtor under chapter 11 of the Bankruptcy Code in the Bankruptcy Court, case number 12-13992 (rg).

17. "*Claim*" means any claim (except as otherwise set forth herein) against a Debtor as defined in section 101(5) of the Bankruptcy Code.

18. "*Claims Bar Date*" means March 17, 2014, representing such period of limitation as was fixed by an order of the Bankruptcy Court for filing such Claims.

19. "*Claims Objection Bar Date*" means, as applicable: (a) 60 days after the Effective Date; or (b) such other period of limitation as may be fixed by an order of the Bankruptcy Court or the relevant parties for objecting to any Claims.

20. "*Claims Register*" means the official register of Claims maintained by the Clerk of the Bankruptcy Court.

21. "*Class*" means a category of Holders of Claims or Equity Interests as set forth in Article III hereof pursuant to section 1122(a) of the Bankruptcy Code.

22. "*Confirmation*" means the entry of the Confirmation Order on the docket of the Chapter 11 Case, subject to all conditions specified in the Plan having been (a) satisfied or (b) waived.

23. "*Confirmation Date*" means the date upon which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Case, within the meaning of Bankruptcy Rules 5003 and 9021.

24. "*Confirmation Hearing*" means the hearing held by the Bankruptcy Court on Confirmation of the Plan pursuant to section 1129 of the Bankruptcy Code, as such hearing may be continued from time to time.

25. "*Confirmation Order*" means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

26. "*Consummation*" means the occurrence of the Effective Date.

27. "*Debtor*" means 624 East 222nd Street, LLC a/k/a 624 E. 22nd Street Realty, LLC.

4

28. "*Debtor in Possession*" means, the Debtor, as debtor in possession in this Chapter 11 Case.

29. "*Disclosure Statement*" means the Fourth Amended Disclosure Statement for this Plan, as amended, supplemented or modified from time to time, including all exhibits and schedules thereto and references therein that relate to the Plan, which is prepared and distributed in accordance with the Bankruptcy Code, Bankruptcy Rules and any other applicable law.

30. "*Disputed Claim*" means, with respect to any Claim, any Claim that is not yet allowed.

31. "*Disputed Claims Reserve*" means a reserve for any distributions to be set aside on account of Disputed Claims.

32. "*Disbursing Agent*" means Ravin Greenberg, LLC, counsel to Allerton, who shall make or facilitate distributions provided by the Plan.

33. "*Effective Date*" means the 15th day that is the first Business Day after the Confirmation Date, provided: (a) no stay of the Confirmation Order is in effect; and (b) all conditions to Confirmation specified in the Plan have been: (i) satisfied; or (ii) waived.

34. "*Entity*" means an entity as defined in section 101(15) of the Bankruptcy Code.

35. "*Equity Interest*" means any membership interest, share of common stock, preferred stock or other instrument evidencing an ownership interest in any of the Debtor, whether or not transferable, and any option, warrant or right, contractual or otherwise, to acquire any such interest in a Debtor that existed immediately prior to the Effective Date, including any Claim subject to subordination pursuant to section 510(b) of the Bankruptcy Code arising therefrom.

36. "*Estate*" means, the estate created for the Debtor in this Chapter 11 Case pursuant to section 541 of the Bankruptcy Code.

37. "*Executory Contract*" means a contract to which one or more of the Debtor is a party that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

38. "*Fee Claim*" means a Claim under sections 328, 330(a), 331, 363 or 503 of the Bankruptcy Code for Accrued Professional Compensation, including, but not limited to, Allerton's counsel.

39. "*File*" or "*Filed*" means file, filed or filing with the Bankruptcy Court or its authorized designee in this Chapter 11 Case.

40. "*Final Order*" means an order or judgment of the Bankruptcy Court, or other court of competent jurisdiction, as entered on the docket in any Chapter 11 Case or the docket of any court of competent jurisdiction, that has not been reversed, stayed, modified or amended, and as to which the time to appeal, or seek certiorari or move for a new trial, reargument or rehearing

5

has expired and no appeal or petition for certiorari or other proceedings for a new trial, reargument or rehearing been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been timely Filed has been withdrawn or resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought, or the new trial, reargument or rehearing shall have been denied, resulted in no modification of such order or otherwise been dismissed with prejudice, <u>provided</u>, <u>however</u>, that the possibility that a motion under Rule 69 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be filed with respect to such order shall not cause such order not to be a Final Order.

41. *"Foreclosure Action"* means the action commenced by Allerton on August 20, 2008, by filing a Summons, Complaint and Notice of Pendency of its foreclosure action in the State Court in response to the Debtor's default of its obligations to Allerton under certain loan documents including but not limited to a mortgage granted by the Debtor in favor of Allerton on the Debtor's real property.

42. "*General Administrative Claim*" means any Administrative Claim that is not a Fee Claim.

43. "*General Unsecured Claim*" means any unsecured Claim against any Debtor, which is not the Allowed Trust Fund Claim, a Priority Tax Claim, Administrative Claim, Fee Claim or Other Priority Claim.

44. "*Holder*" means an Entity holding a Claim or an Equity Interest.

45. "*Impaired*" means, with respect to a class of claims or Equity Interests, a Claim or an Equity Interest that is impaired within the meaning of section 1124 of the Bankruptcy Code.

46. "*Impaired Class*" means an impaired Class within the meaning of section 1124 of the Bankruptcy Code.

47. *"Initial Distribution"* means the first distribution to be made on, or as soon as practicable after, the Effective Date by the Disbursing Agent to the Holders of the Allowed Class 2, 3, and 4 Claims.

48. "*Other Priority Claim*" means any Claim accorded priority in right of payment under section 507(a) of the Bankruptcy Code, other than a Priority Tax Claim or an Administrative Claim.

49. *"Other Secured Claim"* means any secured Claim against the Debtor not specifically described in the Plan and which claim shall be secured by something less than substantially all of the Debtor's assets.

50. *"Person"* means a person as defined in section 101(41) of the Bankruptcy Code.

51. "*Petition Date*" means September 21, 2012, the date on which the Debtor commenced the Chapter 11 Case.

52. "*Plan*" means this fourth amended plan of reorganization, as amended, supplemented or modified from time to time, and including any Plan Supplement, which may be incorporated herein by reference.

53. "*Plan Proponent*" means Allerton Fund II LLC.

54. "*Priority Tax Claim*" means any Claim of a governmental unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

55. "*Proof of Claim*" means a proof of Claim Filed against any of the Debtor in the Chapter 11 Case.

56. "*Pro Rata*" means the proportion that an Allowed Claim in a particular Class bears to the aggregate amount of Allowed Claims in that Class, or the proportion that Allowed Claims in a particular Class bear to the aggregate amount of Allowed Claims in a particular Class and other Classes entitled to share in the same recovery as such Allowed Claim under the Plan.

57. "*Real Property*" or "*Property*" means that real property owned by the Debtor located at 624 East 222nd Street, Bronx, New York.

58. "*Releasing Parties*" means the Debtor (on behalf of itself or the Estate, as applicable) and all Holders of Claims or Equity Interests.

59. "*Restructuring Transactions*" means, collectively those mergers, consolidations, restructurings, dispositions, liquidations or dissolutions necessary or appropriate to effectuate the purpose of the Plan.

60. *Retained Professional*" means any Entity: (a) employed in this Chapter 11 Case pursuant to a Final Order in accordance with sections 327 and 1103 of the Bankruptcy Code and to be compensated for services rendered prior to the Effective Date, pursuant to sections 327, 328, 329, 330, 331 or 363 of the Bankruptcy Code.

61. "*Schedules*" *mean, c*ollectively, the schedules of assets and liabilities, schedules of Executory Contracts and Unexpired Leases and statements of financial affairs Filed by the Debtor pursuant to section 521 of the Bankruptcy Code and in substantial accordance with the Official Bankruptcy Forms as the same may have been amended, modified or supplemented from time to time.

62. "*State Court*" means the Supreme Court of New York, Bronx County in which the Foreclosure Action was commenced.

63. "*State Court Receiver*" means Dominick Calderoni, Esq., the Receiver, appointed by order of the State Court dated February 11, 2010.

7

64. "*Unexpired Lease*" means a lease to which the Debtor is a party that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

65. "*Unimpaired*" means, with respect to a Class of Claims or Equity Interests, a Claim or an Equity Interest that is unimpaired within the meaning of section 1124 of the Bankruptcy Code.

66. "*Unimpaired Class*" means an unimpaired Class within the meaning of section 1124 of the Bankruptcy Code.

# ARTICLE II.

## ADMINISTRATIVE CLAIMS AND PRIORITY TAX CLAIMS
## AND UNITED STATES TRUSTEE STATUTORY FEE

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims have not been classified and thus are excluded from the Classes of Claims and Equity Interests set forth in Article III.

A.    *Administrative Claims*

1. General Administrative Claims

Except as otherwise provided herein, except to the extent that a Holder of an Allowed Administrative Claim and the Plan Proponent agrees to less favorable treatment to such Holder, each Holder of an Allowed Administrative Claim, including an Allowed Fee Claim, will be paid the full unpaid amount of such Allowed Administrative Claim in Cash:

• on the Effective Date or as soon as reasonably practicable thereafter or, if not then due, when such Allowed Administrative Claim is due or as soon as reasonably practicable thereafter;

• if an Administrative Claim is Allowed after the Effective Date, on the date such Administrative Claim is Allowed or as soon as reasonably practicable thereafter or, if not then due, when such Allowed Administrative Claim is due;

• at such time and upon such terms as may be agreed upon by such Holder and Allerton, as the case may be; or

• at such time and upon such terms as set forth in an order of the Bankruptcy Court.

Notwithstanding the foregoing, Allowed Administrative Claims that arise in the ordinary course shall be paid in full in Cash in the ordinary course of business in accordance with the terms and subject to the conditions of any agreements governing, instruments evidencing, or other documents relating to, such transactions.

(a)    Requests for Payment of Administrative Claims

Except as otherwise provided in this Article II hereof, unless previously Filed, requests for payment of General Administrative Claims must be Filed and served pursuant to the procedures specified in the Confirmation Order and pursuant to the applicable Administrative Claims Bar Date.  Holders of General Administrative Claims that do not File and serve such a request by the applicable Administrative Claims Bar Date shall be forever barred, estopped and enjoined from asserting such General Administrative Claims against Allerton, the Debtor, or the Debtor's Estate, and such Administrative Claims shall be deemed discharged as of the Effective Date.

Allerton may object to any Administrative Claim no later than sixty (60) days from the

9

Administrative Claim Bar Date, subject to extensions by the Bankruptcy Court or on motion of a party in interest approved by the Bankruptcy Court. Unless Allerton (or other party with standing) objects to a timely-filed and properly filed and/or served Administrative Claim, such Administrative Claim will be deemed allowed in the amount requested. In the event the Plan Proponent objects to an Administrative Claim, the parties may confer to try to reach a settlement and, failing that, the Bankruptcy Court will determine whether such Administrative Claim should be allowed and, if so, in what amount.

**Any requests for payment of Administrative Claims that are not properly filed and served by the Administrative Claim Bar Date shall not appear on the Claims Register and shall be disallowed automatically without the need for any objection from the Plan Proponent or any action by the Bankruptcy Court.**

(b)     Fee Claims

Retained Professionals or other Entities asserting a Fee Claim for services rendered before the Confirmation Date must File and serve on the Debtor, the Plan Proponent, and the United States Trustee, and such other Entities who are designated by the Bankruptcy Rules or any order of the Bankruptcy Court an application for final allowance of such Fee Claim no later than thirty (30) days after the Effective Date. After notice and a hearing in accordance with the procedures established by the Bankruptcy Code and prior Bankruptcy Court orders, the Allowed amounts of such Professional Compensation shall be determined by the Bankruptcy Court.

B.     *Priority Tax Claims*

In full and final satisfaction, release and discharge of and in exchange for each Allowed Priority Tax Claim, each Holder of an Allowed Priority Tax Claim due and payable on or prior to the Effective Date shall receive from the Plan Proponent, as soon as reasonably practicable after the Effective Date, on account of such Claim: (1) Cash in an amount equal to the amount of such Allowed Priority Tax Claim; (2) Cash in an amount agreed to by the Plan Proponent and such Holder; provided, however, that such parties may further agree for the payment of such Allowed Priority Tax Claim at a later date; or (3) at the option of the Plan Proponent, Cash in an aggregate amount of such Allowed Priority Tax Claim payable in installment payments over a period not more than five years after the Petition Date, pursuant to section 1129(a)(9)(C) of the Bankruptcy Code. Any Allowed Priority Tax Claim not due and owing on or before the Effective Date will be paid in full in Cash in accordance with the terms of any agreement between the Plan Proponent and such Holder, or as may be due and payable under applicable non-bankruptcy law or in the ordinary course of business.

C.     *United States Trustee Statutory Fees*

While the Debtor is in Chapter 11, the Receiver shall pay or cause to be paid all United States Trustee quarterly fees under 28 U.S.C. § 1930(a)(6), plus interest due and payable under 31 U.S.C. § 3717 on all disbursements by the Debtor or made on the Debtor's behalf on or before the Effective Date. Thereafter, after Confirmation, the Disbursing Agent shall pay or

10

cause to be paid all such fees and any applicable interest on all disbursements, including Plan payments and disbursements in and outside the ordinary course of the Debtor's business, until the entry of a Final Order, dismissal of the Chapter 11 Case or conversion of the Chapter 11 Case to cases under chapter 7 of the Bankruptcy Code.

## ARTICLE III.

## CLASSIFICATION AND TREATMENT OF CLASSIFIED CLAIMS AND EQUITY INTERESTS

A.    *Classification and Treatment of Claims against and Equity Interests in the Debtor.*

The classification and treatment of Claims and Equity Interests against the Debtor is as follows.

1.    **Class 1 – Secured Claim of Allerton Fund II LLC**

*Classification:*    Class 1 Claim consists of the Secured Claim of Allerton Fund II, LLC secured by a mortgage lien on substantially the Debtor's Real Property located at 624 East 222nd Street, Bronx, New York.

*Treatment:*    In satisfaction of Allerton's Secured Claim, Allerton shall receive either (i) on the Effective Date or upon Closing on the Sale of the Property, whichever occurs first, conveyance of the Property if Allerton is the Successful Bidder (as defined below) of the Property or (ii) if Allerton is not the Successful Bidder of the Property, Allerton shall receive a cash payment equal to the full amount of its Allowed Claim upon Closing of the Sale of the Property or the Effective Date, whichever occurs first. Conveyance of the Property in satisfaction of the Secured Claim, upon the Effective Date, including all accrued "per diem" charges.

*Voting Rights:*    Class 1 is Unimpaired; Holders of Class 1 Claims, as Plan Proponent, has accepted the Plan in the event it is the successful bidder for the Property. Allerton hereby reserves the right to vote on its Plan, in the event it is treated in any other manner (or in the event it is not the successful purchaser of the Property).

2.    **Class 2 – Other Priority Claims**

*Classification:*    Class 2 Claims shall consist of those Allowed Other Priority Claims accorded priority in right of payment under section 507(a) of the Bankruptcy Code, other than a Claim of a governmental unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

*Treatment:*    Except to the extent that a Holder of a Class 2 Claim has been paid by the Debtor prior to the Effective Date and unless otherwise

agreed to by the Plan Proponent and the Holder of an Allowed Class 2 Claim, each Holder of an Allowed Class 2 Claim shall receive in full and final satisfaction of such Allowed Class 2 Claim, payment of the Allowed Class 2 Claim in full in Cash on or as soon as reasonably practicable after the Effective Date.

*Voting Rights:*    Class 2 is Unimpaired, Holders of Class 2 Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, Holders of Class 2 Claims are not entitled to vote to accept or reject the Plan; provided, however, that all Class 2 Claims shall be subject to Allowance under the provisions of the Plan.

### 3.    Class 3 – General Unsecured Claims

*Classification:*    Class 3 shall consist of Allowed General Unsecured Claims.

*Treatment:*    In exchange for full and final satisfaction, settlement, release and discharge of each Allowed General Unsecured Claim against the Debtor (except to the extent that a Holder of an Allowed Other General Unsecured Claim against the Debtor agrees to less favorable treatment), if Allerton is the Successful Bidder for the Property, each Holder of an Allowed General Unsecured Claim shall receive on the Effective Date, a cash payment equal to 100% of its Allowed General Unsecured Claim as of the Petition Date, without accrued interest. If Allerton is not the Successful Bidder for the Property, each Holder of an Allowed General Unsecured Claim shall receive on the Effective Date, a pro rata cash payment up to the full amount of its Allowed General Unsecured Claim as of the Petition Date, without interest, from the remaining proceeds from the sale of the Property and Debtor's cash on hand.

*Voting Rights:*    Class 3 is Impaired.  Holder of Claims in Class 3 shall be entitled to vote.

### 4.    Class 4 – Equity Interests

*Classification:*    Class 4 shall consist of Allowed Equity Interests in the Debtor.

*Treatment:*    Equity Interest Holders shall receive the balance of the Plan Fund (as defined in V. B. below) after all other distributions provided under the Plan have been made.  All Equity Interests shall be cancelled upon the Effective Date.

*Voting Rights:*    As a result the implemented bid procedures, Class 4 is not Impaired; Holders of Class 4 Interests are not entitled to vote.

B.    *Special Provision Governing Unimpaired Claims*

Except as otherwise provided herein, nothing under the Plan shall affect Allerton's rights in respect of any Unimpaired Claims, including all rights in respect of legal and equitable defenses to or setoffs or recoupment against any such Unimpaired Claims.

# ARTICLE IV.

## ACCEPTANCE OR REJECTION OF THE PLAN

A.    *Presumed Acceptance of Plan*

Classes 1, and 2 are Unimpaired under the Plan, and is, therefore, conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.

B.    *Voting Classes*

Class 3 and Class 4 are Impaired, and shall be entitled to vote to accept or reject the Plan.

C.    *Acceptance by Impaired Classes of Claims*

Pursuant to section 1126(c) of the Bankruptcy Code and except as otherwise provided in section 1126(e) of the Bankruptcy Code, an Impaired Class of Claims entitled to vote to accept or reject the Plan has accepted the Plan if the Holders of at least two-thirds in dollar amount and more than one-half in number of the Allowed Claims in such Class actually voting have voted to accept the Plan.

D.    *Controversy Concerning Impairment*

If a controversy arises as to whether any Claims or Interests, or any Class thereof, are Impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date.

E.    *Cramdown*

Where applicable, the Plan Proponent requests Confirmation of the Plan under section 1129(b) of the Bankruptcy Code with respect to any Impaired Class that does not accept the Plan pursuant to section 1126 of the Bankruptcy Code. The Plan Proponent reserves the right to modify the Plan to the extent, if any, that Confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification.

### ARTICLE  V.

### MEANS  FOR  IMPLEMENTATION  OF THE PLAN

A.    *General Settlement of Claims*

As discussed further in the Disclosure Statement and as otherwise provided herein, pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, Distributions, releases, and other benefits provided under the Plan, upon the Effective Date, the provisions of the Plan shall constitute a good faith compromise and settlements of all Claims and Equity Interests and controversies resolved pursuant to the Plan. Distributions made to Holders of Allowed Claims in any Class are intended to be final.

B.    *Sources of Cash for Plan Distributions*

If Allerton  is the Successful  Bidder of the Property, Aall cash necessary for payments required by the Plan will be funded from a combination of cash from Allerton,  and remaining cash on hand held by the Receiver on the Effective Date.

Specifically,  and in exchange for the conveyance of the Property:

1.  Upon entry of an Order approving  the Disclosure Statement, Allerton shall place into its counsel's trust account cash in the total amount of (and in readily  available  and cleared funds) $325,000.00 ("Allerton  Payment").

2.  On the Effective  Date, the Receiver shall turnover all funds on hand to Allerton's counsel.    As of May 31, 2014, the Receiver had funds on hand totaling approximately  $121,000.00.

3.  Allerton estimates that the Allerton  Payment of $325,000.00, together with the approximate  $121,000.00[1] held by the Receiver, in the total estimated  amount of $446,000.00 (the "Plan Fund") will be sufficient  to pay (i) all Administrative  Claims, and namely for allowed legal fees due to Wayne Greenwald P.C. and all accrued U.S. Trustee quarterly fees, plus any additional Allowed  Administrative Claims, including those which may be due to Allerton's  counsel (by virtue  of its substantial  contribution to this case), (ii) all priority claims, (iii) all Allowed Unsecured Claims, and (iv) provide a significant  dividend  payable to Equity.

3.

4.    -If Allerton  is not the Successful  Bidder, the Plan will be funded from the remaining

**Formatted:** No bullets or numbering

---

[1] The Receiver's  funds on hand may go slightly up or down from month to month, depending upon expenses, but the balance has consistently stayed between $100,000 and $200,000.00 during this case, according  to filed Operating Reports.

14

proceeds available from the sale of the Debtor's Property, if any, after payment of the Class 1 Claim and those monies held by the Receiver. Allerton believes that based upon the required Minimum Overbid required and the amount that will be held by the Receiver on the Effective Date will be sufficient to pay (i) all Administrative Claims, and namely for allowed legal fees due to Wayne Greenwald P.C. and all accrued U.S. Trustee quarterly fees, plus any additional Allowed Administrative Claims, including those which may be due to Allerton's counsel (by virtue of its substantial contribution to this case), (ii) all priority claims, and (iii) all Allowed Unsecured Claims (without interest).

    i.    *Means and Conditions for Effectuating Transfer of the Property*

The Confirmation Order confirming the Plan shall specifically provide and shall constitute an order of the Bankruptcy Court authorizing and directing the Debtor (or transfer agent), upon the occurrence of the Effective Date, to transfer the Property and to close the sale of the Property to Allerton (or other successful bidder).

Specifically, at closing, on the Effective Date, the Property shall be transferred to Allerton (or other successful bidder) upon the terms and conditions and otherwise in accordance with the Plan, and Allerton (or other successful bidder) shall receive:

(a) a deed to the Property purchased in form and substance acceptable to Allerton (or other successful bidder), executed by the Debtor (or the transfer agent designated in Plan and/or Confirmation Order) to be recorded in the appropriate Register's office (the "Deed"), free and clear of all Liens, Claims and encumbrances, except as otherwise set forth in this Plan;

(b) bill of sale in a form and substance acceptable to Allerton (or other successful bidder), transferring to Allerton (or other successful bidder) all personal property used in or useful to the operation and maintenance of the Property (where applicable);

On the Effective Date, the Debtor (or a designated transfer agent) is authorized and shall execute, release and deliver all documents reasonably necessary to consummate the transactions contemplated by the terms and conditions of the Plan. Pursuant to Sections 105, 1141 (c) and 1142(b) of the Bankruptcy Code, the Debtor (or a designated transfer agent) shall be authorized to execute any estoppel certificate, or any notice of satisfaction, release or discharge of any Lien, Claim or encumbrance not expressly preserved in this Plan and deliver such notices to any and all federal, state and local governmental agencies or departments for filing and recordation, and the Confirmation Order shall expressly so provide.

C.    *Disbursing Agent/Transfer Agent*

Except as set forth elsewhere in this Plan all payments required to be made under this Plan shall be made by the Disbursing Agent, which shall be the firm of Ravin Greenberg, LLC, in the event Allerton is the successful purchaser. In the event Allerton is not the successful purchaser, the Debtor's counsel shall be the Disbursing Agent and made in accordance with the terms of this Plan from the Net Sale Proceeds and any Cash on hand.

In the event an authorized representative of the Debtor is unable or unwilling to execute a deed and other necessary closing documents to effectuate the transfer of the Property, Wayne Greenwald, Esq, counsel for the Debtor, is hereby designated as transfer agent (the "Transfer Agent"), and as attorney-in-fact for the Debtor, and shall be authorized to execute any and all documents, including a deed, on the Debtor's behalf that is necessary to transfer title to the Property as provided in this Plan.

D.    *Management of Debtor Post-Confirmation*

On and after the Effective Date, the Debtor may, in its discretion, continue to operate, notwithstanding that its primary asset will have been sold.shall be dissolved and, therefore, its operations shall not continue.

E.    *Post-Confirmation Reporting*

Until the Court issues a Final Decree and closes the Chapter 11 Case, the Debtor and/or the Receiver and/or Allerton (if it is the successful purchaser), shall file quarterly post-confirmation reports with the Court (and the Debtor shall attend status conferences as necessary).

F.    *Exemption from Certain Transfer Taxes*

Pursuant to section 1146(a) of the Bankruptcy Code, any transfers of property pursuant hereto shall not be subject to any stamp tax or other similar tax or governmental assessment in the United States, and the Confirmation Order shall direct the appropriate state or local governmental officials or agents to forgo the collection of any such tax or governmental assessment and to accept for filing and recordation instruments or other documents pursuant to such transfers of property without the payment of any such tax or governmental assessment. Such exemption specifically applies, without limitation, to (1) the creation of any mortgage, deed of trust, lien or other security interest; (2) the making or assignment of any lease or sublease; (3) any Restructuring Transaction; or (4) the making or delivery of any deed or other instrument of transfer under, in furtherance of or in connection with the Plan, including (a) any merger agreements; (b) agreements of consolidation, restructuring, disposition, liquidation or dissolution; (c) deeds; (d) bills of sale; or (e) assignments executed in connection with any Restructuring Transaction pursuant to the Plan.

G.    *Release of Liens, Claims and Equity Interests*

16

Except as otherwise provided in the Plan or in any contract, instrument, release or other agreement or document entered into or delivered in connection with the Plan, on the Effective Date, provided a transfer of the Property has occurred, and concurrently with the applicable distributions made pursuant to the Plan, all Claims, Equity Interests, mortgages, deeds of trust, liens or other security interests against the property of any Estate shall be fully released and discharged.

## ARTICLE VI.

## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

All Executory Contracts not assumed and assigned to the Allerton or the Successful Bidder, as the case may be, shall be deemed rejected as the Effective Date. Any party holding a claim arising from the rejection of an Executory Contract shall file a claim with the Bankruptcy Court within thirty (30) days of Confirmation of the Plan. <u>Tenant leases are not affected by the Plan</u>.

## ARTICLE VII.

## PROVISIONS GOVERNING DISTRIBUTIONS

A.      *Distributions for Allowed Claims*

Except as otherwise provided herein or as may be ordered by the Bankruptcy Court, and subject to the establishment of a Disputed Claims Reserve, all distributions with respect to Claims that are Allowed Claims as of the Effective Date shall be made by the Disbursing Agent as set forth herein.

B.      *Distributions on Account of Claims Allowed After the Effective Date*

1.      Payments and Distributions on Disputed Claims

Notwithstanding any provision herein to the contrary, no partial payments and no partial distributions will be made with respect to a Disputed Claim until the resolution of any such disputes by settlement or Final Order. On the first Business Day that is 20 calendar days after the end of the calendar quarter in which a Disputed Claim becomes an Allowed Claim, the Holder of such Allowed Claim will receive such payments and distributions to which that Holder is then entitled under the Plan. In the event Claims require adjudication or other resolution, the Plan Proponent, <u>if it is the successful bidder,</u> reserves the right to, or shall upon an order of the Bankruptcy Court, establish appropriate reserves for potential payment of any such Claims.

2.      Special Rules for Distributions to Holders of Disputed Claims

Notwithstanding any provision otherwise in the Plan and except as otherwise agreed to by the relevant parties, no partial payments and no partial distributions shall be made with respect to any Disputed Claim until all Disputed Claims held by the Holder of such Disputed Claim have become Allowed Claims or have otherwise been resolved by settlement or Final

17

Order.

C.    *Delivery and Distributions and Undeliverable or Unclaimed Distributions*

    1.    Delivery of Distributions in General

Except as otherwise provided herein, the Disbursing Agent shall make distributions to Holders of Allowed Claims at the address for each such Holder as indicated on the Debtor's Filed schedules as of the date of any such distribution; provided, however, that if such Holder Files a Proof of Claim the address identified by the Proof of Claim shall be the address for such distribution, and the manner of delivery for such distributions shall be determined at the discretion of the Plan Proponent. Nothing herein shall require or be deemed to require the Plan Proponent or the Disbursing Agent to attempt to locate any Holder of an Allowed Claim. Distributions shall be made in accordance with the provisions of the Plan.

    2.    Minimum Distributions

Notwithstanding anything herein to the contrary, the Disbursing Agent shall not be required to make distributions or payments of less than $25.00 and shall not be required to make partial distributions or payments of fractions of dollars. Whenever any payment or distribution of a fraction of a dollar under the Plan would otherwise be called for, the actual payment or distribution will reflect a rounding of such fraction to the nearest whole dollar, with half dollars or less being rounded down. Any Holder of an Allowed Claim whose aggregate distribution under this Plan is less than $25.00 shall forfeit, at the option of the Disbursing Agent, such amount.

    3.    Undeliverable Distributions

If any distribution to a Holder of an Allowed Claim made in accordance with the Plan is returned to the Disbursing Agent as undeliverable, no further distributions shall be made to such Holder unless and until the Disbursing Agent is notified in writing of such Holder's then current address, at which time all currently due missed distributions shall be made to such Holder on the next Periodic Distribution Date. Undeliverable distributions shall remain in the possession of the Disbursing Agent until such time as any such distributions become deliverable.

Undeliverable distributions shall not be entitled to any additional interest, dividends or other accruals of any kind on account of their distribution being undeliverable.

**ARTICLE VIII.**

18

**PROCEDURES FOR RESOLVING DISPUTED, CONTINGENT
AND UNLIQUIDATED CLAIMS OR EQUITY INTERESTS**

A.    _Resolution of Disputed Claims_

    1.    Prosecution of Claims Objections

If it is the successful bidder, Allerton shall have the exclusive authority to File objections on or before the Claims Objection Bar Date and settle, compromise, withdraw or litigate to judgment objections to any and all Claims. From and after the Effective Date, Allerton may settle, compromise or withdraw objections to any Disputed Claim without approval of the Bankruptcy Court or notice to any party. Otherwise, if Allerton is not the successful bidder, the Debtor shall maintain standing to take action hereunder.

    2.    Deadline to File Objections to Claims

Any objections to Claims, other than Administrative Claims, shall be Filed no later than the Claims Objection Bar Date, although the Claims Objection Bar Date may be moved with Bankruptcy Court approval.

B.    _Claims Allowance_

Except as expressly provided herein or in any order entered in the Chapter 11 Case prior to the Effective Date (including the Confirmation Order), no Claim shall be deemed Allowed unless and until such Claim is deemed Allowed under the Plan or the Bankruptcy Code or the Bankruptcy Court has entered a Final Order (including the Confirmation Order) in the Chapter 11 Case allowing such Claim. Except as expressly provided by the Plan or any order entered in the Chapter 11 Case prior to the Effective Date (including the Confirmation Order), the Plan Proponent will have and shall retain after the Effective Date any and all rights and defenses that the Debtor and/or Allerton had with respect to any Claim as of the Petition Date.

C.    _Controversy Concerning Impairment_

If a controversy arises as to whether any Claims or any Class of Claims are Impaired under the Plan, the Bankruptcy Court shall, after notice and a hearing, determine any such controversy before the Confirmation Date.

D.    _Disallowance of Claims_

All Claims of any Entity from which property is sought by the Debtor under section 542, 543, 550 or 553 of the Bankruptcy Code or that the Debtor allege is a transferee of a transfer that is avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549 or 724(a) of the Bankruptcy Code shall be disallowed if such Entity or transferee has failed to turnover such property.

**EXCEPT AS OTHERWISE AGREED TO BY THE PLAN PROPONENT ANY AND ALL PROOFS OF CLAIM FILED AFTER THE APPLICABLE CLAIMS BAR DATE (MARCH 17, 2014) SHALL BE DEEMED DISALLOWED AND EXPUNGED AS OF THE EFFECTIVE DATE WITHOUT FURTHER NOTICE TO OR ACTION,**

**ORDER OR APPROVAL OF THE BANKRUPTCY COURT, AND HOLDERS OF SUCH CLAIMS MAY NOT RECEIVE ANY DISTRIBUTIONS ON ACCOUNT OF SUCH CLAIMS, UNLESS SUCH LATE PROOF OF CLAIM IS DEEMED TIMELY FILED BY A FINAL ORDER OF THE BANKRUPTCY COURT ON OR BEFORE THE CONFIRMATION HEARING.**

E.     *Amendments to Claims*

On or after the Effective Date, except as otherwise provided in the Plan, a Claim may not be re-filed or amended without the prior authorization of the Bankruptcy Court or Allerton and any such re-filed or amended Claim shall be deemed disallowed and expunged without any further notice to or action, order or approval of the Bankruptcy Court.

**ARTICLE IX.**

**CONDITIONS PRECEDENT TO CONFIRMATION AND CONSUMMATION OF THE PLAN**

A.     *Conditions Precedent to Confirmation*

It shall be a condition precedent to Confirmation of the Plan that:

1.  All provisions, terms and conditions hereof are approved in the Confirmation Order;

2.  The Plan and all Plan Supplement documents (if any), including any amendments, modifications or supplements thereto, if any, shall be acceptable to the Plan Proponent; and

~~3.    Entry of a Confirmation Order acceptable to the Plan Proponent.; and~~

~~4.~~3.    ~~Funding of the Allerton Payment.~~

B.     *Substantial Consummation*

The Plan shall be deemed substantially consummated upon the Effective Date, provided the Property has been transferred.

C.     *Waiver of Conditions*

The conditions precedent to Confirmation of the Plan and to Consummation of the Plan set forth herein may be waived by the Plan Proponent without notice, leave or order of the Bankruptcy Court or any formal action other than by proceeding to confirm or consummate the Plan.

D.     *Effect of Non-Occurrence of Conditions to Consummation*

If the Consummation of the Plan does not occur, the Plan shall be null and void in all

> **Formatted:** Default, Justified, Numbered + Level: 1 + Numbering Style: 1, 2, 3, … + Start at: 1 + Alignment: Left + Aligned at: 0.5" + Indent at: 0.75"

respects and nothing contained in the Plan or the Disclosure Statement shall: (1) constitute a waiver or release of any claims; (2) prejudice in any manner the rights of the Plan Proponent, the Debtor or any Holders or any other Entity; or (3) constitute an admission, acknowledgment, offer or undertaking by the Plan Proponent in any respect.

# ARTICLE X.

## SETTLEMENT, EXCULPATION, AND RELATED PROVISIONS

A.    _Compromise and Settlement_

Notwithstanding anything contained herein to the contrary, the allowance, classification and treatment of all Allowed Claims and their respective distributions and treatments hereunder takes into account and conforms to the relative priority and rights of the Claims and the Equity Interests in each Class in connection with any contractual, legal and equitable subordination rights relating thereto whether arising under general principles of equitable subordination, section 510(b) and section 510(c) of the Bankruptcy Code or otherwise.  As of the Effective Date, any and all such rights described in the preceding sentence are settled, compromised and released pursuant hereto.

B.    _Exculpated Parties and Releasing Parties_

Exculpated Parties under the Plan are the Plan Proponent, its successors and assigns, and its agents including its attorneys, as well as the Debtor, its agents and attorneys.

Releasing Parties are all Holders of Claims who are bound by the Plan.

C.    _Exculpation_

As of the Effective Date, each of the Releasing Parties discharges and releases and shall be deemed to have provided a full discharge and release to each Exculpated Party (and each such Exculpated Parties so released shall be deemed fully released and discharged by the releasing parties) and their respective properties from any and all causes of action existing as of the Effective Date in law, at equity, whether for tort or under contract, or otherwise, arising from or related in any way to the Debtor, including those that the Debtor would have been legally entitled to assert in their own right (whether individually or collectively) or that any holder of a claim or an equity interest or other entity would have been legally entitled to assert on behalf of the Debtor or its estate, including causes of action arising under Chapter 5 of the Bankruptcy Code.

To the extent permitted by Section 1125(e) of the Bankruptcy Code the Exculpated Parties shall neither have, nor incur any liability to any entity for any prepetition or postpetition act taken or omitted to be taken in connection with, or related to formulating, negotiating, preparing, disseminating, implementing, administering, confirming or effecting the consummation of the Plan, the disclosure statement, or any contract, instrument, release or other agreement or document created or entered into in connection with the plan or any other prepetition or postpetition act taken or omitted to be taken in connection with or in

contemplation of the restructuring of the Debtor; provided, however, that the foregoing "exculpation" shall have no effect on the liability of any entity that results from any such act or omission that is determined in a final order to have resulted from gross negligence, willful misconduct, breach of fiduciary duty, criminal conduct, ultra vires actions, or the disclosure of confidential information that causes damages.

Nothing in the Plan or the Confirmation order shall enjoin the United States Government or any of its agencies, from bringing any claim, suit, action or other proceedings (whether directly, indirectly, derivatively or otherwise) against the Debtor, or the Debtor's officers, directors, members, employees, attorneys, advisors, agents, representatives and assigns, or the Debtor's property, or against Allerton, for any liability, including under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state or local authority. In addition, the exculpation provided for in the Plan shall not release any attorney from any obligations owed under rule 1.8(h) of the New York State Rules of Professional Conduct.

D.    *Preservation of Rights of Action / Reservation of Rights*

    1.    Maintenance of Causes of Action

Except as otherwise provided in the Plan or Confirmation Order, Allerton, if it is the successful bidder, —shall retain all rights to and shall have exclusive standing to commence, pursue, litigate or settle, as appropriate, any and all Causes of Action including, but not limited to, any Chapter 5 Claims, whether existing as of the Petition Date or thereafter arising, in any court or other tribunal including in an adversary proceeding Filed in the Chapter 11 Case.

Allerton, if it is the successful bidder, —may in its sole discretion elect not to pursue any Causes of Action that the Debtor otherwise has authority to pursue hereunder (including Chapter 5 Claims) the pursuit of which the Plan Proponent deems not to be in the best interest of the Estate.

In the event that Allerton is not the successful bidder, the Debtor shall have standing to take action under this section

    2.    Preservation of All Causes of Action Not Expressly Sold, Settled or Released

Unless a claim or Cause of Action against a Holder of a Claim or an Equity Interest or other Entity is expressly waived, abandoned, relinquished, released, compromised or settled herein or any Final Order (including the Confirmation Order), Allerton expressly reserves such claim or Cause of Action for later action (including claims and Causes of Action of which the Plan Proponent or the Debtor may presently be unaware or which may arise or exist by reason of additional facts or circumstances unknown to the Plan Proponent or the Debtor at this time or facts or circumstances that may change or be different from those the Plan Proponent or the Debtor now believes to exist).

# ARTICLE XI.

## BINDING NATURE OF PLAN

The provisions of the Plan shall bind all Holders of Claims and Interests and their respective successors and assign.

# ARTICLE XII.

## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall, after the Effective Date, retain such jurisdiction over the Chapter 11 Case and with respect to any and all matters related to the Chapter 11 Case and to the extent permissible under the Bankruptcy Code.

# ARTICLE XIII.

## MISCELLANEOUS PROVISIONS

A.    _Modification of Plan_

Effective as of the date hereof and subject to the limitations and rights contained in the Plan: (a) the Plan Proponent reserves the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules, to amend or modify the Plan prior to the entry of the Confirmation Order; and (b) after the entry of the Confirmation Order, the Plan Proponent, may, upon order of the Bankruptcy Court, amend or modify the Plan, in accordance with section 1127(b) of the Bankruptcy Code or remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan.

B.    _Revocation of Plan_

The Plan Proponent reserves the right to revoke or withdraw the Plan prior to the Confirmation Date and to File subsequent chapter 11 plans. If the Plan Proponent revokes or withdraws the Plan, or if Confirmation or Consummation does not occur, then: (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan, assumption or rejection of Executory Contracts or Unexpired Leases effected by the Plan and any document or agreement executed pursuant hereto shall be deemed null and void except as may be set forth in a separate order entered by the Bankruptcy Court; and (3) nothing contained in the Plan shall: (a) constitute a waiver or release of any Claims by or against, or any Equity Interests in, the Debtor or any other Entity; (b) prejudice in any manner the rights of the Plan Proponent or the Debtor or any other Entity; or (c) constitute an admission, acknowledgement, offer or undertaking of any sort by the Plan Proponent or the Debtor or any other Entity.

23

C.      *Successors and Assigns*

The rights, benefits and obligations of any Entity named or referred to herein shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such Entity, except that the Plan Proponent shall not be considered a successor in interest to the Debtor.

D.      *Reservation of Rights*

Except as expressly set forth herein, the Plan shall have no force or effect unless and until the Bankruptcy Court enters the Confirmation Order.   Neither the filing of the Plan, any statement or provision contained herein, nor the taking of any action by the Plan Proponent or the Debtor or any other Entity with respect to the Plan shall be or shall be deemed to be an admission or waiver of any rights of: (1) the Plan Proponent or the Debtor with respect to the Holders of Claims or Equity Interests or other Entity; or (2) any Holder of a Claim or an Equity Interest or other Entity prior to the Effective Date.

E.      *Further Assurances*

The Plan Proponent, the Debtor (or a designated transfer agent), all Holders of Claims receiving distributions hereunder and all other Entities shall, from time to time, prepare, execute and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan or the Confirmation Order.

F.      *Severability*

If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision then will be applicable as altered or interpreted, provided that any such alteration or interpretation must be in form and substance acceptable to Allerton; provided further that Allerton may seek an expedited hearing before the Bankruptcy Court to address any objection to any such alteration or interpretation of the foregoing. Notwithstanding any such order by the Bankruptcy Court, alteration or interpretation, the remainder of the terms and provisions of the Plan shall remain in full force and effect.   The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

G.    _Service of Documents_

Any pleading, notice or other document required by the Plan to be served on or delivered shall be sent to:

| Debtor | Debtor's Counsel |
|---|---|
| 624 East 222nd Street, LLC<br>4089 Wilder Avenue<br>Bronx, NY 10466 | Wayne Greenwald P.C.<br>475 Park Avenue South, 26th Floor<br>New York, NY 10016<br>Phone: (212) 983-1922<br>Fax: (212) 983-1553<br>Email: grimlawyers@aol.com |
| United States Trustee | Allerton Fund II, LLC's Counsel |
| United States Trustee<br>201 Varick Street<br>Suite 1006<br>New York, NY 10014<br>Attn: Serene K. Nakano, Esq. | Ravin Greenberg, LLC<br>101 Eisenhower Parkway<br>Roseland, New Jersey 07068<br>Attn: Chad B. Friedman<br>Phone: (973) 226-1500<br>Fax: (973) 226-6888<br>Email: cfriedman@ravingreenberg.com |

H.    _Filing of Additional Documents_

On or before the Effective Date, the Plan Proponent may file with the Bankruptcy Court all agreements and other documents that may be necessary or appropriate to effectuate and further evidence the terms and conditions hereof.

Respectfully submitted,

/s/ Morris Piller
Allerton Fund II, LLC
By: Morris Piller
Title: Managing Member

Dated: September 8, 2014

25