**RAVIN GREENBERG FRIEDMAN, LLC**
Chad B. Friedman
Brian L. Baker
Jaimie A. Slosberg
101 Eisenhower Parkway
Roseland, New Jersey 07068
Tel: (973) 226-1500
Facsimile: (973) 226-6888

*Counsel for Allerton Fund II LLC*

**Hearing Date: September 30, 2014**
**Hearing Time: 10:00 a.m.**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

In re:

**624 EAST 222ND STREET, LLC**,

　　　　　　Debtor.

Chapter 11

Case No.: 12-13992 (rg)

---

**NOTICE OF ALLERTON FUND II, LLC'S MOTION FOR ENTRY OF AN ORDER (I)
APPROVING THE ADEQUACY OF ITS FOURTH AMENDED DISCLOSURE
STATEMENT; (II) ESTABLISHING BIDDING AND NOTICING PROCEDURES, AND
SETTING DATES, IN CONNECTION WITH THE SALE OF DEBTOR'S REAL
PROPERTY PURSUANT TO ALLERTON'S PROPOSED PLAN; (III) FIXING DATES
AND DEADLINES RELATED TO CONFIRMATION OF THE PLAN; AND (IV)
APPROVING CERTAIN PROCEDURES FOR SOLICITING AND TABULATING THE
VOTES ON, AND FOR OBJECTING TO, THE PLAN**

　　　　**PLEASE TAKE NOTICE** that a hearing on the attached motion (the "***Motion***")[1] of

Allerton Fund II LLC ("**Allerton**"), a secured creditor of 624 East 222nd Street LLC, the debtor

and debtor in possession (the "**Debtor**"), in the above captioned matter will be held before the

Honorable Robert Grossman, United States Bankruptcy Judge, at the United States Bankruptcy

Court for the Southern District of New York, Alexander Hamilton Custom House, 1 Bowling

Green, New York, NY 10004-1408 (the "**Court**") on **September 30, 2014, at 10:00 a.m.**

**prevailing Eastern Time**. **Please Note** that, on June 25, 2014, Allerton filed the *Fourth*

*Amended Disclosure Statement Describing the* **Fourth** *Amended Chapter 11 Plan of Liquidation Under Chapter 11 of the Bankruptcy Code Proposed by Allerton Fund II LLC* [Docket No. 80] and on August 4, 2014, filed a modified *Fourth Amended Disclosure Statement* [Docket No. 89] and on September 8, 2014, filed a second modified *Fourth Amended Disclosure Statement* [Docket No. 90]  (as may be amended, modified or supplemented, the "***Disclosure Statement***") with the Court, and subsequently served notice of same upon all known creditors and parties in interest.

   **PLEASE TAKE FURTHER NOTICE** that objections, if any, to the Motion, approval of the adequacy of the Disclosure Statement, the proposed bidding and notice procedures or entry of the proposed order, in substantially the form annexed as <u>Exhibit A</u> to the Motion (the "**<u>Solicitation Procedures Order</u>**"), together with proof of service, **<u>must</u>**: (i) conform to the applicable provisions of the Federal Rules of Bankruptcy Procedures (the "**<u>Bankruptcy</u> Rules**"), the Local Bankruptcy Rules for the Southern District of New York (the "**<u>Local Bankruptcy Rules</u>**"); (ii) include the name of the objector, the nature and amount of the claims against or interests in the Debtor held thereby; and (iii) state with particularity the legal and factual basis for the objection and the specific grounds therefor, so **<u>actually received no later than 5:00 p.m. prevailing Eastern Time on September 23, 2014</u>** (the "**<u>Objection Deadline</u>**").

   **PLEASE TAKE FURTHER NOTICE** that a hard copy of any objection to the Motion, approval of the adequacy of the Disclosure Statement or entry of the Solicitation Procedures Order must also be delivered via first class mail to the Office of the United States Trustee for the Southern District of New York, 201 Varick Street, Suite 1006, New York, NY 10014, Attn: Serene K. Nakano, Esq., by the Objection Deadline.

---

[1] All capitalized terms used but otherwise not defined herein shall have the meanings set forth in the Motion.

**PLEASE TAKE FURTHER NOTICE** that, if no objections are timely filed and served with respect to the Motion in accordance with this notice, the Debtor shall submit the Solicitation Procedures Order, substantially in the form annexed to the Motion, to the Court on or after the Objection Deadline, which order the Court may enter with no further notice or opportunity to be heard.

Dated: September 8, 2014             /s/ Jaimie A. Slosberg
New York, New York              Chad B. Friedman
                               Brian L. Baker
                               Jaimie A. Slosberg

**RAVIN GREENBERG FRIEDMAN, LLC**
101 Eisenhower Parkway
Roseland, New Jersey 07068
Telephone: (973) 226-1500
Facsimile: (973) 226-1500

Counsel for Allerton Fund II LLC

**RAVIN GREENBERG FRIEDMAN, LLC**
Chad B. Friedman
Brian L. Baker
Jaimie A. Slosberg
101 Eisenhower Parkway
Roseland, New Jersey 07068
Tel: (973) 226-1500
Facsimile: (973) 226-6888

*Counsel for Allerton Fund II LLC*

**Hearing Date: September 30, 2014**
**Hearing Time: 10:00 a.m.**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

In re:

**624 EAST 222ND STREET, LLC**,

Debtor.

Chapter 11

Case No.: 12-13992 (rg)

**ALLERTON FUND II, LLC'S MOTION FOR ENTRY OF AN ORDER (I) APPROVING
THE ADEQUACY OF ITS FOURTH AMENDED DISCLOSURE STATEMENT;
(II) ESTABLISHING BIDDING AND NOTICING PROCEDURES, AND SETTING
DATES, IN CONNECTION WITH THE SALE OF DEBTOR'S REAL PROPERTY
PURSUANT TO ALLERTON'S PROPOSED PLAN; (III) FIXING DATES AND
DEADLINES RELATED TO CONFIRMATION OF THE PLAN; AND (IV)
APPROVING CERTAIN PROCEDURES FOR SOLICITING AND TABULATING
THE VOTES ON, AND FOR OBJECTING TO, THE PLAN**

Allerton Fund II LLC ("**Allerton**"), a secured creditor of 624 East 222nd Street LLC, the

debtor and debtor in possession (the "**Debtor**"), in the above captioned matter, files this motion

(the "**Motion**") for entry of an order (the "**Solicitation Procedures Order**"), substantially in the

form attached hereto as **Exhibit A**: (i) Approving the Adequacy of its Fourth Amended

Disclosure Statement; (ii) Establishing Bidding and Noticing Procedures, and Setting Dates, in

Connection with the Sale of Debtor's Real Property Pursuant to Allerton's Proposed Plan; (iii)

Fixing Dates and Deadlines Related to Confirmation of the Plan; and (iv) Approving Certain

Procedures for Soliciting and Tabulating the Votes on, and For Objecting to, the Plan. In support of the Motion, Allerton respectfully states as follows:

## JURISDICTION

1.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2.     Venue is proper pursuant to 28 U.S.C. § 1408.

3.     The statutory bases for the relief requested herein are sections 105(a), 502, 1123(a), 1124, 1125, 1126 and 1128 of title 11 of the United States Code (the "**_Bankruptcy Code_**"), Rules 2002, 3003, 3016, 3017, 3018 and 3020 of the Federal Rules of Bankruptcy Procedure (the "**_Bankruptcy Rules_**").

## INTRODUCTION

4.     On September 21, 2012 (the "**Petition Date**"), the Debtor commenced its Chapter 11 case (the "**Chapter 11 Case**") by filing with the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") a voluntary petition for relief under chapter 11 of title 11 of the United States Bankruptcy Code, 11 U.S.C. §101 et seq., (the "**Bankruptcy Code**").

5.     The Debtor's sole asset is the Property located at 624 East 222nd Street, Bronx, New York consists of a six-story multiple-dwelling residential building with approximately forty-three (43) apartment units (the "**Real Property**").

6.     As such, the Debtor's case is a "single asset" case within the meaning of the Bankruptcy Code.

7.     Prior to the Petition Date, and in response to the Debtor's default under its obligations to Allerton, on August 20, 2008, Allerton filed a Summons, Complaint and Notice

of Pendency of its foreclosure action (the "**Foreclosure Action**") in the office of the County Clerk of the Supreme Court of New York, Bronx County (the "**State Court**").

8.    On February 11, 2010, the State Court granted Allerton's request for a receiver and entered an Order appointing a temporary receiver in the Foreclosure Action and named Dominick Calderoni, Esq. as the receiver (the "**Receiver**").

9.    The State Court scheduled a foreclosure sale of the Debtor's Property for September 24, 2012.

## BACKGROUND

10.    After the Debtor filed the Chapter 11 Case, Allerton asserted that the Debtor filed its petition to delay and frustrate Allerton's right to proceed to a sale and not for a legitimate reorganizational purpose.

11.    A more detailed factual background regarding the Debtor, including its business operations, debt and the events leading to the commencement of this chapter 11 case is set forth in the Disclosure Statement (defined below).

12.    Shortly after the Debtor's Petition was filed, Allerton filed a motion to Excuse the State Court Receiver from Compliance with Turnover under Section 543 of the Bankruptcy Code; and to determine that the rents that were being generated by the Debtor's real property are not Property of the Estate (the "**543 Motion**").

13.    The 543 Motion was predicated on, among other things, the basis that the Debtor's principal had inherited the Property from her father and had no experience owning, and no expertise operating, multifamily residential real estate.

14.    The Debtor and Allerton agreed upon a stipulation which excused the Receiver from Turnover and provided other related relief.

5

15.    The Receiver continues to operate the Property for the benefit of the within estate.

**The Debtor Fails to File a Plan or Take any Meaningful Action**
**During the First Six Months of the Chapter 11 Case**

16.    After the Petition Date, the Debtor's exclusive period within which it may file a plan expired without the Debtor filing a plan.  During this time the Debtor made no attempt to secure a buyer for the Real Property.  The Debtor did not retain a realtor or other broker to market the Real Property for sale.

**Allerton Files a Plan of Liquidation**

17.    After the expiration of approximately six (6) months since the Petition Date with no meaningful progress toward proposing a viable plan or reorganization, on March 7, 2013, Allerton filed a Liquidating Plan and Disclosure Statement.   Shortly thereafter, on April 19, 2013, in response to certain requested modifications and clarifications by the United States Trustee, Allerton filed a First Amended Disclosure Statement and First Amended Liquidating Plan.  Allerton's Plan sought approval of a sale of the Real Property to Allerton in satisfaction of Allerton's fully secured claim and in exchange for payment from Allerton in an amount equal to satisfy all allowed claims against the Debtor.

**Debtor files a Motion to Approve a Sale of the Real Property**

18.    In response to the Allerton Plan, on July 1, 2013, the Debtor filed a motion seeking approval of a sale of the Real Property to an individual buyer (the "**Interested Buyer**") for an aggregate sale price of $3,800,000.00 (the "**Sale Motion**").

**The Bankruptcy Court Denies the Debtor's Sale Motion**

19.    The Bankruptcy Court denied the Sale Motion, agreeing with Allerton, which had objected to the sale (docket no. 48), raising, among other things, a plethora of problematic issues, including that (i) a sale for 3,800,000.00, after payment of broker fees in the approximate amount

6

of $160,000.00 and significant transfer taxes, would not necessarily pay all creditors in full, (ii) the Sale Motion was procedurally deficient and did not provide adequate notice to creditors and parties in interest, (iii) the sale was not subject to any higher or better offers, (iv) the contingencies and closing date of the potential sale were unclear, (v) the existence of an excessive stalking horse fee to the buyer, and (vi) there were several other concerns relating to disclosure.

**The Bankruptcy Court Directs Allerton to Amend its Plan**

20.     The Bankruptcy Court agreed with Allerton that the better way to sell the Real Property was pursuant to a Plan rather than via a 363 motion. The Bankruptcy Court instructed Allerton to re-work its Amended Plan to incorporate a set of sale bidding and noticing procedures therein, and to seek input on those procedures from the Interested Buyer.

**Allerton Files a Second Amended Plan**

21.     At the Bankruptcy Court's urging, and after consultation with the Debtor's counsel, on October 22, 2013, Allerton filed a Second Amended Joint Plan and Disclosure Statement with the Debtor (the "**Joint Plan**").

22.     The Joint Plan provided for an orderly liquidation of the Real Property through a set of sale and bidding procedures. The Joint Plan also incorporated the terms of an agreement between the Debtor and Allerton as to the amount of Allerton's claim. The Debtor had scheduled Allerton's claims as "disputed," but had never been able to articulate the basis of any real dispute. Under the Joint Plan, however, the Debtor withdrew its dispute and agreed to the amount of Allerton's claims. This was necessary to help establish the bidding procedures, including a possible partial credit bid from Allerton.

23.     On January 28, 2014, Allerton filed a supplement to the Joint Plan and Disclosure

7

Statement with a finalized set of bidding procedures (approved by both the Debtor and the Interested Buyer), pursuant to which Allerton acted as a "stalking horse" buyer at a purchase price of $3,610,000.00, which consisted of a partial credit bid (the "**Allerton Bid**").

24.    The Allerton Bid was technically higher and more beneficial to the estate than the offer set forth in the Sale Motion because (i) it was not subject to any broker fee, (ii) free from any transfer taxes, and (iii) was payable immediately upon Confirmation of the Plan.   Counsel to Allerton, however, later confirmed through the Interested Buyer's counsel that the Interested Buyer was no longer interested in bidding on the Real Property at the incremental prices set forth in the bidding procedures.   Therefore, Allerton became the only known active interested buyer.

**Debtor Retains New Counsel and**
**Withdraws Support for Allerton's Second Amended Plan**

25.    In or about December 2013, the Debtor announced it was retaining new counsel. At around the same time, Allerton was advised that the Debtor was considering withdrawing its support for the proposed Joint Plan, and approval of the Joint Plan was delayed, pending proper retention of the Debtor's new counsel.

**Allerton Renegotiates the Terms of**
**the Second Amended Plan with the Debtor**

26.    In March, 2014, the Debtor, with its new counsel, and Allerton, with its counsel, met to discuss the terms of yet another amended plan that the Debtor would support.   That meeting concluded with an oral agreement between the parties, and it was that agreed Allerton would memorialize the terms of the parties' understanding into an agreement, which in turn would be incorporated into a third amended plan (the "**Plan Agreement**").

27.    The Plan Agreement provided for the transfer of the Real Property to Allerton, in exchange for payment from Allerton in an amount sufficient to pay all allowed claims against the

Debtor and its estate, in full, and the unconditional guarantee of a substantial payment to Equity. From Equity's prospective, the Plan Agreement was less risky than a sale under bidding procedures because there was a guaranteed sum payable to Equity, after payment of all Allowed Claims. Allerton memorialized the Plan Agreement and sent it to Debtor's counsel for review.

**Debtor Refuses to Support Agreement
to Terms of Proposed Third Amended Plan**

28.    Allerton also requested that the Debtor execute the Plan Agreement prior to Allerton incurring additional expense associated with drafting yet another amended plan. Allerton believed this was an appropriate and reasonable request given the fact that the Debtor had previously reneged on its support for the Joint Plan. Despite repeated requests from Allerton during the month of April, 2014, the Debtor did not return an executed Plan Agreement.

**Debtor Represents to the Bankruptcy Court that
It had in Fact Agreed to the Terms of an Amended Plan**

29.    Notwithstanding the Debtor's refusal to sign the Plan Agreement and surprisingly, during a status conference in May 2014, the Debtor's counsel represented that the parties had "a deal".

30.    On June 15, 2014, the Court conducted a continued status conference wherein the Debtor conveyed a different position, noting that it again disputed Allerton's claim (a complete reversal of its initial support of the Joint Plan, and its prior representation to the Court that the parties had a deal) and that the Debtor was not in a position to move forward with a plan.

31.    In response to the Debtor's "flip flopping" position (and in partial response to the Court's reaction to the Debtor's changed position), Allerton drafted and filed a Third Amended Disclosure Statement and Third Amended Plan of Liquidation, and modified it several days later through a Fourth Amended Disclosure Statement [Docket No. 80] (the "**Disclosure Statement**")

and a Fourth Amended Plan [Docket No. 81] (the "**Plan**"), which provides for (i) full and immediate payment to Creditors on all Allowed Claims (as of the Petition Date, without interest), and (ii) notwithstanding Equity's actions during this case, the possibility of a very substantial payment thereto.

**The Bankruptcy Court Conditionally Approved the Disclosure Statement**

32.    On July 15, 2014, the Bankruptcy Court held a combined status conference and hearing on the adequacy of the Disclosure Statement (the "**Disclosure Statement Hearing**").

33.    The Bankruptcy Court *conditionally approved* Allerton's Disclosure Statement at the Disclosure Statement Hearing, but, in doing so, directed Allerton to modify the Disclosure Statement and Plan to provide for a sale of the Real Property subject to higher and better offers and to submit bidding procedures for approval.

34.    Consistent with the Court's instructions, Allerton drafted proposed bidding procedures and provided them to Debtor's counsel for review and comment.  Allerton did not receive any response from the Debtor's counsel and, therefore, on August 4, 2014, filed a modified *Fourth Amended Disclosure Statement* [Docket No. 89] and on September 8, 2014, filed a second modified *Fourth Amended Disclosure Statement* [Docket No. 90]  (as may be amended, modified or supplemented, that attached bidding procedures, and on September 8, 2014.

35.    Thereafter Debtor's counsel advised Allerton that it did not agree with the amount of Allerton's credit bid as set forth in the bid procedures, notwithstanding the fact the Debtor, through, its former counsel, had previously agreed to the amount of Allerton's claim in writing. To date, the Debtor has neither challenged the extent validity or priority of Allerton's lien or claim and has not articulated any basis for its challenge to the Allerton credit bid amount.

36.     On September 8, 2014, Allerton, filed a modified Fourth Amended Plan (as may be amended, modified or supplemented) [Docket No. 90] to provide for the sale of the Real Property pursuant to the proposed bidding procedures.

## Relief Requested

37.     By this Motion, Allerton seeks, once and for all, an Order (i) Approving the Adequacy of its Fourth Amended Disclosure Statement; (ii) Establishing Bidding and Noticing Procedures, and Setting Dates, in Connection with the Sale of Debtor's Real Property Pursuant to Allerton's Proposed Plan; (iii) Fixing Dates and Deadlines Related to Confirmation of the Plan; and (iv) Approving Certain Procedures for Soliciting and Tabulating the Votes on, and For Objecting to, the Plan.

## Basis for Relief

### I. Approval of the Disclosure Statement

38.     The Debtor seeks to commence solicitation of acceptances of the Plan. Pursuant to section 1125 of the Bankruptcy Code, the proponent of a proposed chapter 11 plan may not solicit votes on a plan unless such plan and "a written disclosure statement approved, after notice and a hearing, by the court as containing adequate information" are transmitted to those persons whose votes are being solicited. Accordingly, the Debtor requests that the Court approve the Disclosure Statement as providing "adequate information" to holders of impaired claims and interests entitled to vote on the plan. Section 1125(a)(1) of the Bankruptcy Code defines "adequate information" to mean as follows:

> [Information] of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical of the holders of claims or interests in the case, that would enable such a

hypothetical investor of the relevant class to make an informed judgment about the plan.

*See* 11 U.S.C. § 1125(a)(1).

39.    Thus, a disclosure statement must, as a whole, provide information that is "reasonably practicable" to permit an "informed judgment" by creditors and interest holders, if applicable, to vote on a plan of reorganization. *See In re Momentum Mfg. Corp.*, 25 F.3d 1132, 1136 (2d Cir. 1994); *see also In re Ionosphere Clubs*, Inc., 179 B.R. 24, 29 (Bankr. S.D.N.Y. 1995) (adequacy of a disclosure statement "is to be determined on a case-specific basis under a flexible standard that can promote the chapter 11 policy of fair settlement through a negotiation process between informed interested parties") (internal citation omitted).  The need to assess adequacy of information practically and flexibly is also underscored in the legislative history of section 1125 of the Bankruptcy Code:

> Precisely what constitutes adequate information in any particular instance will develop on a case-by-case basis.  Courts will take a practical approach as to what is necessary under the circumstances of each case, such as the cost of preparation of the statements, the need for relative speed in solicitation and confirmation. . . .  In chapter 11 cases, there is frequently great uncertainty.  Therefore the need for flexibility is greatest.

*See* H.R. Rep. 595, at 408-09 (1977).

40.    Courts are vested with wide discretion to determine whether a disclosure statement contains "adequate information" within the meaning of section 1125(a) of the Bankruptcy Code.  *See Kirk v. Texaco, Inc.*, 82 B.R. 678, 682 (S.D.N.Y. 1988) ("The legislative history could hardly be more clear in granting broad discretion to bankruptcy judges under § 1125(a). . . ."); *see also In re PC Liquidation Corp.*, 383 B.R. 856, 865 (E.D.N.Y. 2008) ("what constitutes adequate information in any particular situation is determined on a case-by-case basis…, with the determination being largely within the discretion of the bankruptcy court").

This grant of discretion is intended to permit courts to tailor the disclosures made in connection with the solicitation of votes on a plan of reorganization to facilitate the effective reorganization of debtors in a broad range of businesses and circumstances. *See* H.R. Rep. 595 at 409; *Texaco*, 82 B.R. at 682 (stating bankruptcy judges have a clear congressional mandate to exercise "broad discretion in their supervision of corporate reorganizations"). Accordingly, the determination of whether a disclosure statement contains adequate information must be made on a case-by-case basis, focusing on the unique facts and circumstances of each case. *See In re Phoenix Petroleum Co.*, 278 B.R. 385, 393 (Bankr. E.D. Pa. 2001).

41.    Case law under section 1125 of the Bankruptcy Code has produced a list of topics that a court should look for in a proposed disclosure statement when evaluating the adequacy of the disclosures therein.  Such topics include:

- the events which led to the filing of a bankruptcy petition;
- the relationship of the debtor with the affiliates;
- a description of the available assets and their value;
- the anticipated future of the company;
- the source of information stated in the disclosure statement;
- the present condition of the debtor while in chapter 11;
- claims asserted against the debtor;
- the estimated return to creditors under a chapter 7 liquidation;
- the future management of the debtor;
- the chapter 11 plan or a summary thereof;
- financial information, valuations, and projections relevant to the creditors' decision to accept or reject the chapter 11 plan;
- information relevant to the risks posed to creditors under the plan;
- the actual or projected realizable value from recovery of preferential or otherwise voidable transfers;
- litigation likely to arise in a nonbankruptcy context; and
- tax attributes of the debtor.

*See In re U.S. Brass Corp.*, 194 B.R. 420, 424-25 (Bankr. E.D. Tex. 1996);  *see also In re Scioto Valley Mortg. Co.*, 88 B.R. 168, 170-71 (Bankr. S.D. Ohio 1988) (listing the factors courts have considered in determining the adequacy of information provided in a disclosure statement); *In re*

*Metrocraft Pub. Services, Inc.*, 39 B.R. 567, 568 (Bank. N.D. Ga. 1984) (same).  Disclosure regarding all topics is not necessary in every case. *Brass* at 424.

42.    Here, the Court has already determined that the Disclosure Statement contains adequate information and conditionally approved the Disclosure Statement, finding the Disclosure Statement contains the pertinent information necessary for holders of eligible claims to make an informed decision about whether to vote to accept or reject the Plan, including, among other things, information regarding or relating to:

- voting on the Plan;
- obtaining documents relating to the Plan;
- the corporate history, current corporate structure, businesses and operations of the Debtor, its pre-petition indebtedness and the events leading up to the Chapter 11 Case;
- the key events in the Chapter 11 Case;
- the Plan, including, among other things: the general basis for, and structure of, the Plan; the treatment of unclassified claims; the classification and treatment of claims and interests; certain means for implementation of the Plan; post-Effective Date corporate existence; preservation of certain rights of action; treatment of contracts and leases; o distributions on account of Allowed Claims; resolution of contingent, unliquidated or disputed Claims; settlement, release, injunction and related provisions; modification, revocation or withdrawal of the Plan;
- statutory requirements to confirm the Plan, the conditions for consummation of the Plan and alternatives thereto;
- certain risk factors relating to confirming the Plan, the estimated recoveries under the Plan;
- a statement concerning certain U.S. federal income tax consequences of the Plan; and
- the Debtor's recommendation for parties able to vote on the Plan.

43.    In light of the foregoing, Allerton respectfully submits that the Disclosure Statement complies with all the requirements of section 1125 of the Bankruptcy Code and addresses the information set forth above in a manner that provides holders of claims entitled to vote to accept or reject the Plan with adequate information within the meaning of section 1125 of the Bankruptcy Code.  Allerton requests that the Court authorize it to make non-material changes to the Disclosure Statement and related documents and appendices before distributing Solicitation Packages to each person in accordance with the Solicitation Procedures Order.  If so

14

permitted, Allerton will file redlined copies with the Court of any modified pages marked to reflect the changes from the prior version.

## II. Approval of Bidding and Noticing Procedures, and Setting Dates, in connection with the Sale of Debtor's Real Property Pursuant to Allerton's Proposed Plan

### Proposed Bidding Procedures

44.     As the Allerton Plan contemplates a sale of the Real Property, Allerton respectfully requests approval of the bidding procedures attached to the Disclosure Statement and attached hereto as Exhibit "B" that will govern the proposed sale of the Real Property as contemplated by the Plan

45.     To summarize, the simple and straightforward proposed bidding procedures governing the sale of the Real Property pursuant to the Allerton Plan, provides:

(i)     Allerton shall serve as the Stalking Horse Bidder.   Allerton's Stalking Horse Offer totals $3,910,000.00, which consists of a credit bid of a portion of its claim in the amount of $3,585,000.00, and cash to be paid to the estate in the amount of $325,000.00.[2]

(ii)    The sale of the Real Property is subject to approval by the Bankruptcy Court; entry of an order, providing, *inter alia,* that Allerton is a good faith purchaser, and (iii) that the sale of the Real Property shall be free and clear of all liens, claims, encumbrances and interests.

(iii)     To be deemed a Qualified Bidder[3] a potential bidder ("**Potential Bidder**") must deliver the following to the Notice Parties (as defined below):

---

[2] Allerton's right to credit bid is specifically preserved by the Plan and Allerton specifically preserves the right to bid at the auction, if any, and to credit bid up to the full amount of its claim.

[3] Allerton is deemed to be a Qualified Bidder and is deemed to have submitted a Qualified Bid under the Bidding Procedures.

(i)    a written disclosure of the identity of each entity that will be bidding for the Real Property or otherwise participating in connection with such bid;

(ii)    deliver documents necessary to reasonably permit the Court to determine that the Potential Bidder is reasonably likely to submit a *bona fide* offer and to be able to financially and legally consummate a sale if selected as a Successful Bidder.

(iv)    A bid submitted will be considered a Qualified Bid only if the bid is submitted by a Qualified Bidder and complies with all of the following (a "**Qualified Bid**"):

(i)    it is accompanied by a signed copy of the Bidding Procedures;

(ii)    it states that the applicable Qualified Bidder offers to purchase the Real Property upon the terms and conditions that are no less favorable to the Debtor than those set forth in the Proposed Credit Bid Sale;

(iii)    it includes a signed writing that the bidder's offer is irrevocable until the selection of the Successful Bidder, provided that if such bidder is selected as the Successful Bidder its offer shall remain irrevocable until the earlier of (i) the closing of the Sale to the Successful Bidder, and (ii) the Effective Date of the Fourth Amended Plan.

(iv)    it states that there are no conditions precedent to the bidder's ability to enter into a definitive agreement and that all necessary internal and shareholder approvals have been obtained prior to the bid;

(v)    it includes a duly authorized and executed copy of the Form Asset Purchase Agreement, annexed to the Disclosure Statement and the bidding procedures including the purchase price for the Real Property expressed in U.S. Dollars (the "Purchase Price") and which shall be for a minimum purchase price of $4,000,000.00 (the "Minimum Overbid"), together with all exhibits and schedules thereto, together with copies marked to show any amendments and modifications to the Form Asset Purchase Agreement ("Marked Agreement") and the proposed orders to approve the sale by the Bankruptcy Court;

(vi)    it is accompanied by a good faith deposit in the form of a wire transfer or

16

certified check payable to the order of Allerton's Counsel's Attorney Trust Account equal to ten percent (10%) of the Minimum Overbid (the "Deposit");

(vii)    it is received prior to the Bid Deadline;

(viii)   it states the Qualified Bidder is not relying upon any written or oral statements, representations, promises, warranties or guarantees of any kind whether expressed or implied, by operation of law or otherwise, made by any person or party including the Debtor and/or Allerton, and its respective agents and representatives regarding the Real Property, the Bid Procedures or any information provided in connection therewith;

(ix)     it acknowledges the bid does not request or entitle the Qualified Bidder to any break-up fee, termination fee, expense reimbursement or similar type of payment;

(x)      it states that the bid is not be conditioned on obtaining financing or any internal approval, on the outcome or review of due diligence, environmental, or any other contingencies not otherwise expressly contained in the Purchase Agreement;

(xi)     it states that the sale of the Real Property is subject to confirmation of the Fourth Amended Plan as proposed by Allerton; and

(xii)    it states that Allerton's mortgage shall be satisfied in full, upon closing, unless otherwise agreed to in writing by Allerton. Nothing herein shall prevent a Bidder from submitting a bid to purchase Real Property subject to Allerton's mortgage, provided Allerton agrees to such treatment, in writing

**Notice**

46.    Pursuant to Bankruptcy Rules 2002(a)(2) and 6004(a), creditors are entitled to twenty-one days notice in connection with a proposed sale "unless the court for cause shown shortens the time or directs another method of giving notice." Bankruptcy Rule 2002(c)(1) governs the content of the notice of proposed sale and requires that notice include, *inter alia*, the terms and conditions of any sale and the time fixed for objections. A general description of the

17

assets to be sold is also required.

47.    Allerton asserts that the proposed terms satisfy and are in accordance with Local Bankruptcy Rule 6004-1.    Therefore, Allerton requests that the Court approve the proposed procedures and to permit an auction to take place at the office of Allerton's counsel and to accept and consider any competing bids for the Real Property; and (b) schedule a hearing with regard to the Sale Motion so as to consider the approval of the sale of the Real Property to the successful bidder simultaneously with the Court's hearing on confirmation of the Allerton Plan.

48.    Allerton asserts that Notice of the sale is sufficiently incorporated in Allerton's Disclosure Statement, Plan and will be sufficiently disclosed with the solicitation materials which will also include a copy of the bidding procedures and order approving Allerton's Disclosure Statement and proposed Bidding Procedures.

49.    Under the facts and circumstances presented, Allerton submits that the proposed notice procedures would provide parties in interest with ample notice and opportunity to be heard as to the relief requested and also afford potential competing bidders sufficient time to formulate any bids for the Real Property.

## III. Approval of the Form and Manner of the Disclosure Statement Hearing Notice

50.    Bankruptcy Rule 3017(a) provides, in relevant part, as follows:

> [A]fter a disclosure statement is filed in accordance with Rule 3016(b), the court shall hold a hearing on at least 25 days' notice to the debtors, creditors, equity security holders and other parties in interest as provided in Rule 2002 to consider the disclosure statement and any objections or modifications thereto.   The plan and the disclosure statement shall be mailed with the notice of the hearing only to the debtor, any trustee or committee appointed under the Code, the Securities and Exchange Commission, and any party in interest who requests in writing a copy of the statement or

18

the plan.

Fed. R. Bankr. P. 3017(a); *see also* Fed. R. Bankr. P. 2002(b) (requiring not less than 25-days notice by mail to the debtor, the trustee, all creditors and indenture trustees of the time for filing Objections and the hearing to consider the approval of a disclosure statement).

51.    In compliance with Bankruptcy Rules 3017(a) and 2002(b), as stated above, on June 25, 2014, Allerton served the Disclosure Statement Hearing Notice (identifying the date, time and place of the Disclosure Statement Hearing, how to obtain the Disclosure Statement and/or exhibits thereto and the deadline and procedures for filing objections to approval of the Disclosure Statement) upon all of the Debtor's' known creditors and equity holders, and other parties in interest.

52.    The Disclosure Statement Hearing Notice established July 8, 2014, as the date by which parties in interest must have filed and served objections to the approval of the Disclosure Statement (the "***Disclosure Statement Objection Deadline***").    Thus, parties in interest were provided with no fewer than 25 days to file any objections to the Disclosure Statement and of the Disclosure Statement Hearing.    As such, the Debtor submits that the service described above satisfies the requirements of Bankruptcy Rules 3017(a) and 2002(b) and should be approved.

53.    On July 8, 2014, an attorney purporting to represent the Debtor, not the Debtor's counsel, filed an objection to the Disclosure Statement.

54.    As stated above, on July 15, 2014, this Court conducted a combined status conference and hearing on the adequacy of the Disclosure Statement.    This Court overruled the objection filed purportedly by the Debtor, conditionally approved the Disclosure Statement and directed Allerton to modify the Disclosure Statement and Plan to provide for a sale of the Debtor's Property subject to higher and better offers and to submit bidding procedures to govern

19

such a sale for approval by this Court.

55.    As stated above Allerton complied and now files this Motion seeking the Court's approval of the modified disclosure statement and bidding procedures.  For all of the foregoing reasons, Allerton submits that adequate notice of the Disclosure Statement Hearing occurred and notice of the modified Disclosure Statement and bidding procedures has been made, and therefore, requests that the Court approve the form and manner of notice used by Allerton pursuant to the requirements of the Bankruptcy Code, the Bankruptcy Rules and the Local Bankruptcy Rules.

## IV. Approval of the Solicitation Procedures

### A. Form of Ballots

56.    In accordance with Bankruptcy Rule 3018(c), Allerton has prepared a ballot (the "*Ballot*"), in substantially the form annexed as Exhibit "C" to the Solicitation Procedures Order for individual holders of claims in Classes 1, and 3, which are the only classes Allerton expects will be entitled to vote on the Plan.  Bankruptcy Rule 3018(c) provides, in relevant part, that "[a]n acceptance or rejection shall be in writing, identify the plan or plans accepted or rejected, be signed by the creditor or equity security holder or an authorized agent, and conform to the appropriate Official Form." The forms of Ballots comply with Bankruptcy Rule 3018(c) and are based substantially on Official Form No. 14; however, Allerton modified the Ballots to address the particular circumstances of this chapter 11 case and includes certain additional information that is relevant and appropriate for claims within any of the classes entitled to vote on the Plan, including, without limitation, detailed instructions regarding how to vote on the Plan.

57.    The Ballot will be distributed to holders of claims in Class 1 (Allerton's Secured Claim), and Class 3 (General Unsecured Claims).  All other classes are not entitled to vote to

accept or reject the Plan because they are either unimpaired and, therefore, conclusively presumed to accept the Plan in accordance with section 1126(f) of the Bankruptcy Code, or not entitled to receive or retain any property under the Plan and, therefore, deemed to reject the Plan pursuant to section 1126(g) of the Bankruptcy Code.

58.    The Ballot may be returned to Allerton's Attorneys by first-class, postage prepaid mail in the pre-addressed return envelope provided in a Solicitation Package with each Ballot or by overnight delivery (at the claimholder's expense).

**B. Contents of Solicitation Packages and Procedures for Distribution Thereof**

59.    Bankruptcy Rule 3017(d) sets forth the materials that must be provided to holders of claims and equity interests for the purpose of soliciting their votes upon approval of a disclosure statement and provides as follows:

> Upon approval of a disclosure statement,–except to the extent that the court orders otherwise with respect to one or more unimpaired classes of creditors or equity secured holders–the debtor in possession, trustee, proponent of the plan, or clerk as the court orders, shall mail to all creditors and equity security holders, and in a chapter 11 reorganization case shall transmit to the United States trustee,
>
> > a.    the plan or a court-approved summary of the plan;
> > b.    the disclosure statement approved by the court;
> > c.    notice of the time within which acceptances and rejections of such plan may be filed;  and
> > d.    any other information as the court may direct, including any court a court-approved opinion approving the disclosure statement or summary of the opinion.
>
> In addition, notice of the time fixed for filing objections and the hearing on confirmation shall be mailed to all creditors and equity security holders in accordance with Rule 2002(b), and a form of ballot conforming to the appropriate Official Form shall be mailed to creditors and equity security holders entitled to vote on the plan. Fed. R. Bankr. P. 3017(d).

60.    To comply with Bankruptcy Rule 3017(d), Allerton proposes that within five days

after entry of the Solicitation Procedures Order (such date, the "Solicitation Deadline"), Allerton's attorneys will distribute by first-class, postage prepaid mail, to holders of claims and/or interests, a solicitation package (the "Solicitation Package") containing a copy or conformed printed version of the following:

      a.      the Solicitation Procedures Order;

      b.      (i) a Ballot and voting instructions for the class in which the creditor is entitled to vote;

      c.      the Disclosure Statement, the Plan and the other materials appended thereto, including the Bidding Procedures;

      d.      such other materials as the Court may direct.[4]

61.      Allerton proposes to cause the Solicitation Packages to be served upon the following creditors, interest holders and other persons (with the exclusions noted above), without limitation:  (a) all creditors holding  scheduled claims; (b) all creditors with filed proofs of claims; (c) all non-debtor parties to the Debtors' executory contracts and unexpired leases; (d) the Debtor or its counsel.

## V. Establishing Procedures for Voting on the Plan

### A. Establishing the Voting Deadline for Receipt of Ballots

62.      Bankruptcy Rule 3017(c) provides that, on or before approval of a disclosure statement, the court must fix a time within which the holders of claims and equity interests may vote to accept or reject a plan.  *See* Fed R. Bankr. P. 3017(c).

63.      Allerton requests the Court establish a date to be determined, as the deadline by which all Ballots casting votes on the Plan must be **actually received** by the Allerton's attorneys (the "***Voting Deadline***").  For votes to be counted, Allerton further requests that the Court

require that all holders of claims entitled to vote on the Plan properly complete, execute and return their Ballots by (a) first class mail, (b) overnight courier or (c) personal delivery so that they are actually received by the Allerton's attorneys on or before the Voting Deadline.[5]

### B. Approval of Voting and Tabulation Procedures

64.    Allerton respectfully requests that the Court approve the voting and tabulation procedures described herein, which are consistent with section 1126(c) of the Bankruptcy Code and Bankruptcy Rule 3018(a).

65.    Section 1126(c) of the Bankruptcy Code provides:

> A class of claims has accepted a plan if such plan has been accepted by creditors, other than any entity designated under subsection (e) of this section, that hold at least two-thirds in amount and more than one-half in number of the allowed claims of such class held by creditors, other than any entity designated under subsection (e) of this section, that have accepted or rejected the plan.

11 U.S.C. § 1126(c).    Further, Bankruptcy Rule 3018(a) provides that the "court after notice and hearing may temporarily allow the claim or interest in an amount which the court deems proper for the purpose of accepting or rejecting a plan."    Fed. R. Bankr. P. 3018(a).

### iii. Establishing Claim Amounts for Voting Purposes

66.    Allerton further requests that solely for the purpose of voting to accept or reject the Plan and not for the purpose of the allowance of, or distribution on account of, a claim, each claim within a class of claims entitled to vote to accept or reject the Plan be temporarily allowed in an amount equal to the amount of such claim as set forth in the Debtor's schedules or filed proof of claim, as provided below; provided that Allerton reserves the right to object to (a) the

---

[4] To avoid duplication and reduce expenses, the Debtor proposes that any creditor who has filed duplicate claims which are classified under the Plan in the same class, be provided with only one Solicitation Package.
[5] The method of delivery of Ballots to be sent from each holder of a claim to Allerton's attorneys is at the election and risk of each holder and will be deemed made only when the original executed Ballot is actually received.

amount of any claim set forth for voting purposes on a Ballot, (b) the amount otherwise agreed to by Allerton and the applicable claimant or (c) an amount ordered by the Court; provided, however, Allerton reserves the right to object to any proof of claim on any grounds including for purposes of distribution, or to amend and/or supplement the Schedules.[6]

67.    Claims shall be temporarily allowed, solely for voting purposes, under Bankruptcy Rule 3018(a), in accordance with the following procedures:

a) Except as set forth in subparagraph (d) below, a claim that is scheduled in the Schedules, and with respect to which no proof of claims has been filed, shall be deemed allowed, solely for purposes of voting, in the amount set forth in the Schedules.

b) Except as set forth in subparagraph (d) below, to the extent a scheduled claim is also the subject of a timely-filed proof of claim, the amount of such claim on the Schedules shall control solely for purposes of voting unless a Voting Resolution Event (as defined below) with respect to such claims shall have occurred as set forth below.

c) To the extent a proof of claim is filed by a holder whose claim was not set forth in the Schedules, the holder of such claim shall not be entitled to vote on the Plan unless a Voting Resolution event with respect to such claim shall have occurred as set forth below.

d) With respect to a claim that is (i) scheduled as contingent, unliquidated or disputed or (ii) scheduled as $0 or unknown in amount, the holder of such claim shall not be entitled to vote on the Plan unless a Voting

---

[6] Nothing herein is meant to waive or limit the Debtor's right to object to any such claim.

Resolution Event with respect to such claim shall have occurred as set forth below.

68.    A holder of a claim not entitled to vote on the Plan pursuant to the procedures described immediately above shall be permitted to vote such claim (or to vote such claim in an amount other than the amount set forth in the Schedules) only if one of the following shall have occurred with respect to such claim (a "***Voting Resolution Event***") on or prior to a date and time to be determined by the Court (the "***Voting Resolution Event Deadline***"):

a.    <u>Agreement between the Parties</u>.    A stipulation or other agreement is executed between the holder of such claim and Allerton allowing the holder of such claim to vote such claim in an agreed upon amount.

b.    <u>Bankruptcy Rule 3018(a) Order</u>.    A creditor files with the Bankruptcy Court a motion seeking temporary allowance of its claim for voting purposes in an amount other than set forth in the Schedules pursuant to Bankruptcy Rule 3018(a) (a "***Rule 3018(a) Motion***") on or before the Voting Resolution Event Deadline that is approved by the Court after notice and a hearing.

Allerton requests that the Court direct that Rule 3018(a) Motions must: (i) be made in writing, (ii) comply with the Bankruptcy Code, the Bankruptcy Rules and the Local Bankruptcy Rules, (iii) set forth the name of the party asserting the Rule 3018(a) Motion, (iv) state with particularity the legal and factual bases for the Rule 3018(a) Motion, (v) be set for hearing at the Confirmation Hearing and (vi) be served by personal service, overnight delivery, first class mail or facsimile so as to be received by the Notice Parties (as defined below) no later than the Rule 3018(a) Motion Deadline.

Allerton further requests that, in the event that Allerton and such party are unable to resolve any issues raised by the Rule 3018(a) Motion prior to the Confirmation Hearing, (a) Allerton may object to the Rule 3018(a) Motion at the Confirmation Hearing (without filing a written objection), (b) Allerton's attorney shall inform the Court at or prior to the Confirmation Hearing whether including such provisional Ballot would affect the outcome of the voting to accept or reject the respective Plan in the relevant class in which the provisional Ballot was cast and (c) the Court then shall determine whether the provisional Ballot should be counted as a vote on the Plan Such a procedure will help ensure an efficient tabulation of Ballots to be completed accurately by the Confirmation Hearing.

c.    <u>Other Order of the Court</u>.    The Court otherwise orders the allowance of such claim for purposes of voting to accept or reject the Plan.

69.    Allerton proposes to provide any party that is permitted to provisionally vote its

25

claim on account of the timely occurrence of a Voting Resolution Event with an appropriate Ballot within two (2) business days from the Voting Resolution Event Deadline.  Such parties must then return a duly-completed, properly exercised ballot to the Debtor's attorney on or before the Voting Deadline (unless Allerton extends the deadline in its sole discretion to facilitate a reasonable opportunity for such creditor to vote upon the Plan).  This affords parties voting provisional claims between five days to one week to vote on the Plan.

70.    Allerton believes that the foregoing procedures appropriately balance the right of certain creditors to provisionally vote their claim, on the one hand, and Allerton's need to move toward confirmation of its Plan without delay.  Further, to ensure that all creditors receive notice of these procedures for temporarily allowing certain claims solely for voting purposes, certain notices annexed to the Solicitation Procedures Order, including, without limitation, the Confirmation Hearing Notice, the Notice of Contingent, Unliquidated or Disputed Claim Status and the Contract/Lease Party Notice, describe these procedures.

### v.    Voting and Tabulation Procedures

71.    Allerton proposes to use the following voting procedures and standard assumptions in tabulating Ballots (the "***Voting and Tabulation Procedures***"):

a.    <u>Votes Not Counted</u>. the following Ballots will not be counted or considered for any purpose in determining whether the Plan has been accepted or rejected:

      i.    any Ballot received by Allerton's attorneys after the Voting Deadline, unless Allerton shall have granted in writing an extension of the Voting Deadline with respect to such Ballot;

      ii.    any Ballot that is illegible or contains insufficient information to permit the identification of the holder of the claim;

      iii.    any Ballot cast by an entity that (A) does not hold a claim in a class that is entitled to vote on the Plan or (B) is not otherwise entitled to vote pursuant to the procedures described herein;

iv.     any Ballot sent to the Debtor, the Debtors' agents and/or representatives;

v.      any unsigned Ballot;

vi.     any Ballot that is received by Allerton's attorneys by facsimile or other means of electronic transmission; or

vii.    any Ballot not marked to accept or reject the Plan or marked both to accept and reject the Plan.

b.    <u>Rejected Ballots</u>.    Except as otherwise provided herein and subject to any contrary order of the Court, unless the Ballot being furnished is timely received by Allerton's attorneys on or before the Voting Deadline, Allerton shall be entitled to reject such Ballot as invalid and, therefore, decline to count it in connection with confirmation of the Plan; _furthermore_, Allerton reserves the right to reject any and all Ballots not in proper form, the acceptance of which, in the opinion of Allerton, would not be in accordance with the provisions of the Bankruptcy Code or the Bankruptcy Rules.

c.    <u>Multiple Ballots</u>. If multiple Ballots are received from the same holder of a claim with respect to the same claim prior to the Voting Deadline, the latest dated Ballot timely received shall count for voting purposes, subject to contrary order of the Court; _provided_, _however_, that in instances where ambiguity exists with respect to which Ballot was the latest dated, Allerton's attorneys have the right to contact the respective claimant to determine such claimant's intent and calculate the vote according thereto.

d.    <u>No Vote Splitting</u>.    Holders must vote all of their claims within a particular class either to accept or reject the Plan and may not split any such votes. Accordingly, any Ballot that partially rejects and partially accepts the Plan will not be counted. Further, if a holder has multiple claims within the same class, Allerton may, in its discretion, aggregate the claims of any particular holder within a class for the purpose of counting votes.

e.    <u>Ballots Signed by Representative</u>. If a Ballot is signed by a trustee, executor, administrator, guardian, attorney in fact or other person acting in a fiduciary or representative capacity, such person shall be required to indicate such capacity when signing the Ballot. Allerton may request proper evidence of such representative's authority to sign the Ballot prior to accepting such Ballot.

f.    <u>Defective Ballots and/or Master Ballots</u>. Allerton, subject to contrary order of the Court, may waive any defects or irregularities as to any particular Ballot at any time, either before or after the Voting Deadline; _provided_, _however_, that:

i.      any such waivers shall be documented in the voting reports completed by Allerton's attorneys;

ii.     neither Allerton, nor any other entity, will be under any duty to provide notification of such defects or irregularities other than as provided in the voting

reports prepared by Allerton's attorneys, nor will any of them incur any liability for failure to provide such notification; and

iii.    unless waived by Allerton, subject to contrary order of the Court, any defects or irregularities associated with the delivery of Ballots must be cured prior to the Voting Deadline or such Ballots will <u>not</u> be counted.

g.    <u>No Class Votes</u>. If no votes to accept or reject the Plan are received with respect to a particular class, such class shall be deemed to have voted to accept the Plan.

h.    <u>Lack of Good Faith Designation</u>. In the event a designation for lack of good faith is requested by a party in interest under section 1126(e) of the Bankruptcy Code, the Court will determine whether any vote to accept and/or reject the Plan cast with respect to that claim will be counted for purposes of determining whether the Plan has been accepted and/or rejected by such claim.

72.    Allerton believes the proposed solicitation procedures, Voting and Tabulation Procedures and other relief requested herein are appropriate and in compliance with the Bankruptcy Code, the Bankruptcy Rules and the Local Bankruptcy Rules. Allerton submits it has shown good cause for the approval of the solicitation procedures and Voting and Tabulation Procedures set forth herein and, therefore, request that the Court approve the solicitation procedures, the Voting and Tabulation Procedures, the exhibits attached thereto and the related relief set forth herein.

## VI.    Establishing Confirmation Hearing Date, Notice and Objection Procedures

### A.    Establishing the Confirmation Hearing Date

73.    Bankruptcy Rule 3017(c) provides:

On or before approval of the disclosure statement, the court shall fix a time within which the holders of claims and interests may accept or reject the plan and may fix a date for the hearing on confirmation.

74.    In accordance with Bankruptcy Rule 3017(c) the Debtor requests the Court schedule a hearing on confirmation of the Plan (the "***Confirmation Hearing***") on a date to be

determined by the Court. The Confirmation Hearing may be continued from time to time by the Court or Allerton without further notice other than adjournments announced in open court and/or a notice of adjournment filed with the Court. The proposed timing for the Confirmation Hearing is in compliance with the Bankruptcy Code, the Bankruptcy Rules and the Local Bankruptcy Rules and will enable Allerton to pursue confirmation of the Plan in a timely fashion.

**B.      Establishing Procedures and
        Form of Notice of the Confirmation Hearing**

75.      Bankruptcy Rules 2002(b) and (d) require no less than 25-days notice to all holders of claims and equity interests of the time fixed for filing objections to the hearing on confirmation of a chapter 11 plan. In accordance with Bankruptcy Rules 2002 and 3017(d), Allerton proposes to provide to all known holders of claims and equity interests a copy of the Solicitation Packages, which will provide all parties in interest more than 25-days notice prior to the proposed deadline for filing objections, if any, to the Plan (the "***Plan Objection Deadline***").

76.      By this motion, Allerton requests that the Court approve the Confirmation Hearing Notice, which contains, among other things: (a) instructions as to how to view or obtain copies of the Disclosure Statement (including the Plan and other exhibits thereto), the Solicitation Procedures Order and all other materials in the Solicitation Package (excluding Ballots) from Allerton's attorneys and/or the Court's website via PACER, (b) the Voting Deadline, (c) the Plan Objection Deadline, (d) the Confirmation Hearing date and time, and (e) procedures for the temporary allowance of claims. Because it is included in the Solicitation Package, such notice will be sent on or prior to the date that is 25 days prior to the Plan Objection Deadline.

**C.      Establishing the Deadline for Filing
        Objections to Confirmation of the Plan**

77. Pursuant to Bankruptcy Rule 3020(b)(l), objections to confirmation of a plan must be filed and served "within a time fixed by the court." The Confirmation Hearing Notice provides, and Allerton requests that the Court direct, that any objection to confirmation of the Plan must (a) be in writing, (b) conform to the Bankruptcy Rules, (c) set forth the name of the objector, the nature and amount of claims or equity interests held or asserted by the objector, (d) the basis for the objection and the specific grounds therefor and (e) be filed with the Court, together with proof of service thereof, and served upon and received no later than a date and time to be determined by the Court, by the following parties (the "*Notice Parties*"):

| Debtor | Debtor's Counsel |
|---|---|
| 624 East 222nd Street, LLC<br>4089 Wilder Avenue<br>Bronx, NY 10466 | Wayne Greenwald P.C.<br>475 Park Avenue South, 26th Floor<br>New York, NY 10016<br>Phone: (212) 983-1922<br>Fax: (212) 983-1553<br>Email: grimlawyers@aol.com |
| United States Trustee | Allerton Fund II, LLC's Counsel |
| United States Trustee<br>201 Varick Street<br>Suite 1006<br>New York, NY 10014<br>Attn: Serene K. Nakano, Esq. | Ravin Greenberg, LLC<br>101 Eisenhower Parkway<br>Roseland, New Jersey 07068<br>Attn: Chad B. Friedman<br>Phone: (973) 226-1500<br>Fax: (973) 226-6888<br>Email: cfriedman@ravingreenberg.com |

## Motion Practice

78. This Motion includes citations to the applicable rules and statutory authorities upon which the relief requested herein is predicated, and a discussion of their application to this Motion. Accordingly, Allerton submits that this Motion satisfies Local Bankruptcy Rule 9013-1(a).

## Notice

79.    Notice of this Motion has been provided in accordance with the applicable Bankruptcy Rules.  Due to the nature of the relief requested herein, Allerton respectfully submits that further notice of this Motion is neither required nor necessary.

### No Prior Request

80.    Except as set forth herein, no prior motion for the relief requested herein has been made to this or any other court.

WHEREFORE, for the reasons set forth herein, Allerton respectfully requests that the Court enter an order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested herein and granting such other and further relief as the Court deems appropriate.

Dated: September 8, 2014
New York, New York

*/s/ Jaimie A. Slosberg*
Chad B. Friedman
Brian L. Baker
Jaimie A. Slosberg
RAVIN GREENBERG FRIEDMAN LLC
101 Eisenhower Parkway
Roseland, New Jersey 07068
Telephone: (973)226-1500

Counsel for Allerton Fund II LLC